J-S48036-14

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA, | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| WAYNE MICHAEL GLASS, | |
| Appellant | No. 216 MDA 2014 |

Appeal from the Judgment of Sentence January 8, 2014
in the Court of Common Pleas of Adams County
Criminal Division at No.: CP-01-MD-0001896-2013

BEFORE: DONOHUE, J., JENKINS, J., and PLATT, J.*

MEMORANDUM BY PLATT, J.: **FILED AUGUST 20, 2014**

Appellant, Wayne Michael Glass, appeals from the judgment of sentence imposed after his non-jury conviction of indirect criminal contempt involving violations of a protection from abuse (PFA) order. Appellant's counsel seeks to withdraw from representation pursuant to **_Anders v. California_**, 386 U.S. 738 (1967), and **_Commonwealth v. Santiago_**, 978 A.2d 349 (Pa. 2009). We affirm the judgment of sentence and grant counsel's petition to withdraw.

The trial court's March 25, 2014 opinion sets forth the facts of the case as follows:

_____

* Retired Senior Judge assigned to the Superior Court.

Appellant's conviction for indirect criminal contempt stemmed from violations of [the trial c]ourt's April 15, 2013 [o]rder which modified the conditions of a previously entered PFA [o]rder[a] to include a no-contact provision and to extend the terms through April 20, 2017. The April 15, 2013 [o]rder was entered after Appellant acknowledged violations of a PFA [o]rder entered on May 23, 2012. Appellant has received copies of the initial and modified PFA [o]rders entered against him and was present before the [trial c]ourt on April 15, 2013. Following a hearing on January 8, 2014, [the c]ourt determined that Appellant violated the provisions of the PFA [o]rders entered against him by contacting the PFA plaintiff, [the victim], and engaging in conduct which was harassing to her.

[a] The original PFA became effective on April 20, 2012 and was subsequently modified and extended by both a May 23, 2012 and April 15, 2013 PFA [o]rder.

At Appellant's January 8, 2014 hearing, witnesses testified that Appellant had sent a total of eight letters to various parties, including Appellant and [the victim's] children, their daughter-in-law, and the Postmaster at the New Oxford Branch of the United States Postal Service,[b] which contained both explicit references to [the victim] and messages directed to her. These letters were given to [the victim] by the parties to whom they were addressed. The postmarks on the envelopes indicate that the letters were sent between July 9, 2013 and October 21, 2013. At Appellant's indirect criminal contempt hearing, [the victim] and Corporal Christopher Mumma of the Pennsylvania State Police, who read the letters provided by [the victim], testified to the contents of the letters.

[b] [The victim] works as a postal carrier for the U.S.P.S. in New Oxford, Pennsylvania.

The series of letters contained language which both indirectly and directly referenced [the victim]. The letter sent by Appellant in July of 2013 was addressed to [the victim's] supervisor at the postal service, but nevertheless directly related to [the victim]. In that letter, Appellant stated that he believed [the victim] was deceiving and manipulating the mail. In August 2013, Appellant sent a letter to one of his and [the victim's] sons which contained many statements about [the victim], including

"[w]ake up she is on my mind and you guys too[,] I need you in my life," "I love mom," "[a]ll these people don't see what real love is anymore," "I love your mother more than anyone will know," and, in large, bold print, "I want my wife back . . . [t]he love of my life." (N.T. Hearing, 1/08/14, at 10-11). The letter also said "[y]ou know what to do I hope." (*Id.* at 11).

A [twelve]-page section of the August 2013 letter began with "Happy 24th Anniversary [addressed to the victim]." (*Id.*). In that section, Appellant reminisces about his and [the victim's] past relationship and references songs that the two used to listen to together. (*Id.*). The [twelve]-page section also contains a description of roses that Appellant had sent to [the victim] and the meaning of each. (*Id.*). Appellant wrote "[h]usband and wife" across the bottom of the letter. Appellant also wrote about the effects of addiction, discusses divorce, and expresses his desire for a happy marriage. (*See id.*). A sentence at the bottom of one of the pages states: "Since they are no longer two but one, let no man or anything split apart what God has joined together. Only God loves you more than me, [victim]." (*Id.* at 18).

A subsequent letter, received the week of September 16, 2013 and addressed to Appellant's three sons, contained artwork described as depicting a cross with a heart in the middle with a hand holding the heart and two rings intertwined at the top of the cross. (*Id.* at 14). A house had been drawn inside the picture of the heart and in that house there is a picture of a heart that says "love." (*Id.* at 14-15). The picture is signed "Wayne, dad, poppy, and hubby." (*Id.* at 16). Later in the same letter, Appellant states: "There is no one going to me I don't tell [sic] my wife and sons I have them after [twenty-six] years of being together." (*Id.* at 15). The next sentence states: "They are out of their fucking minds for real." (*Id.*). On the following page, Appellant says "I miss you all the most, especially mom in bed with me, smelling her, touching her, having her hair in my face, rubbing her leg up and down my leg before she goes to sleep." (*Id.*). The letter concludes with Appellant directing his sons to "[t]ell mom I love her always and forever and I'm sorry." (*Id.*).

A letter dated October 18[,] 2013 directs a family member to "give [the victim] a hug and kiss from me," though he also instructs the individual not to tell [the victim] that they are from

him because he does not "want any more trouble from the law." (*Id.* at 16). Each of the eight letters references [the victim]. Corporal Mumma testified that, in his experience with [Appellant] and [the victim], the letters which Appellant sends to his children are given to [the victim]. (*See id.*). He also testified that "at least some of [their children], if not all" live with [the victim]. (*Id.* at 18-19).

(Trial Court Opinion, 3/25/14, at 1-4) (citation formatting provided). At the conclusion of the hearing, the trial court found Appellant guilty of indirect criminal contempt for violating the no-contact terms of the April 15, 2013 PFA order, and sentenced him to not less than three nor more than six months' incarceration, consecutive to any sentences Appellant was then serving, plus a fine and costs. The court denied Appellant's post-sentence motion on January 22, 2014. Appellant timely appealed and, on May 16, 2014, counsel filed an application to withdraw and an *Anders* brief on the basis that the appeal is frivolous.[1]

The standard of review for an *Anders* brief is well-settled.

Court-appointed counsel who seek to withdraw from representing an appellant on direct appeal on the basis that the appeal is frivolous must:

(1) petition the court for leave to withdraw stating that, after making a conscientious examination of the record, counsel has determined that the appeal would be frivolous; (2) file a brief referring to anything that arguably might support the appeal but which does not resemble a "no-merit"

_____

[1] Appellant filed a timely Rule 1925(b) statement on February 25, 2014 pursuant to the court's order, and the court filed a Rule 1925(a) opinion on March 25, 2014. *See* Pa.R.A.P. 1925.

- 4 -

> letter or *amicus curiae* brief; and (3) furnish a copy of the brief to the defendant and advise the defendant of his or her right to retain new counsel or raise any additional points that he or she deems worthy of the court's attention.
>
> [T]his Court may not review the merits of the underlying issues without first passing on the request to withdraw.

***Commonwealth v. Lilley***, 978 A.2d 995, 997 (Pa. Super. 2009) (citations and most quotation marks omitted). Further, our Supreme Court ruled in ***Santiago***, ***supra***, that ***Anders*** briefs must contain "a discussion of counsel's reasons for believing that the client's appeal is frivolous[.]" ***Santiago***, ***supra*** at 360.

Instantly, counsel's ***Anders*** brief and application to withdraw comply with the applicable technical requirements and reveal that he has made "a conscientious examination of the record [and] determined that the appeal would be frivolous[.]" ***Lilley***, ***supra*** at 997; (***see also*** Petition for Leave to Withdraw as Counsel, 5/16/14, at 1). Additionally, the record establishes that counsel served Appellant with a copy of the ***Anders*** brief and application to withdraw, and a letter of notice which advised Appellant of his right to retain new counsel or to proceed *pro se* and raise additional issues to this Court. ***See Lilley***, ***supra*** at 997; (***see also*** Petition for Leave to Withdraw as Counsel, 5/16/14, Appendix C, at 1). Further, the application and brief cite "to anything that arguably might support the appeal[.]" ***Lilley***, ***supra*** at 997; (***see also Anders*** Brief, at 11-15). As noted by our Supreme Court in ***Santiago***, the fact that some of counsel's statements

arguably support the frivolity of the appeal does not violate the requirements of **Anders**. **See Santiago**, **supra** at 360-61.

Having concluded that counsel's petition and brief substantially comply with the technical **Anders** requirements, we must "conduct [our] own review of the trial court's proceedings and render an independent judgment as to whether the appeal is, in fact, wholly frivolous." **Lilley**, **supra** at 998 (citation omitted).

The **Anders** brief raises three questions for our review:

1.    Did the Commonwealth fail to present sufficient evidence of indirect criminal contempt?

2.    Was the [trial] court's verdict contrary to the weight of the evidence to the extent that it would shock one's sense of justice?

3.    Did the sentencing court abuse its discretion in sentencing Appellant to [three to six] months, the maximum allowed by law?

(**Anders** Brief, at 8).

Appellant's first issue challenges the sufficiency of the evidence. Our standard of review for sufficiency challenges is well-settled:

In reviewing sufficiency of evidence claims, we must determine whether the evidence admitted at trial, as well as all reasonable inferences drawn therefrom, when viewed in the light most favorable to the verdict winner, are sufficient to support all the elements of the offense. Additionally, to sustain a conviction, the facts and circumstances which the Commonwealth must prove, must be such that every essential element of the crime is established beyond a reasonable doubt. Admittedly, guilt must be based on facts and conditions proved, and not on suspicion or surmise. Entirely circumstantial evidence is sufficient so long as the combination of the evidence links the accused to the crime beyond a reasonable doubt. Any

doubts regarding a defendant's guilt may be resolved by the fact-finder unless the evidence is so weak and inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances. The fact finder is free to believe all, part, or none of the evidence presented at trial.

*Commonwealth v. Moreno*, 14 A.3d 133, 136 (Pa. Super. 2011), *appeal denied*, 44 A.3d 1161 (Pa. 2012) (citations omitted).

Further:

A charge of indirect criminal contempt consists of a claim that a violation of an Order or Decree of court occurred outside the presence of the court. Where a PFA order is involved, an indirect criminal contempt charge is designed to seek punishment for violation of the protective order. As with those accused of any crime, one charged with indirect criminal contempt is to be provided the safeguards which statute and criminal procedures afford. To establish indirect criminal contempt, the Commonwealth must prove: 1) the Order was sufficiently definite, clear, and specific to the contemnor as to leave no doubt of the conduct prohibited; 2) the contemnor had notice of the Order; (3) the act constituting the violation must have been volitional; and 4) the contemnor must have acted with wrongful intent.

*Commonwealth v. Brumbaugh*, 932 A.2d 108, 110 (Pa. Super. 2007) (citations and quotation marks omitted).

Here, the April 15, 2013 PFA order[2] contained a no-contact provision that prohibited Appellant "from having any contact of any type with [the

_____

[2] The PFA order is dated April 15, 2013, and was filed in the **civil** division of the trial court on April 17, 2013. After this Court requested a copy of that order, it was filed in the **criminal** court and made a part of the certified record in this matter on July 22, 2014. The contempt order that is the subject of this appeal refers to the PFA order as having been "entered April
*(Footnote Continued Next Page)*

victim]." (Order, 4/15/13, at 1). Appellant challenges the sufficiency of the Commonwealth's evidence to support the allegation of his wrongful intent, the fourth element necessary for indirect criminal contempt. **See Brumbaugh**, **supra** at 110; (**Anders** Brief, at 8, 12-13). Specifically, Appellant argues that the Commonwealth's evidence regarding his "intent to act contrary to the . . . PFA order" was insufficient because it consisted of "mere references to [the victim]" in the letters to his sons. (**Anders** Brief, at 13). We disagree.

As aptly stated by the trial court:

> . . . [T]here is sufficient evidence to show that Appellant acted with wrongful intent by writing and sending letters which contained references to and messages for [the victim]. The PFA [o]rder against Appellant specifically directed him not to have any contact of **any type** with [the victim] and to refrain from harassing her. . . . Several of the letters . . . contain messages that appear to be directly intended for [the victim] to read, though the envelopes and headings of the letter are not addressed to her. In one letter, Appellant directs his sons to "[t]ell mom [he] love[s] her always and forever and [he's] sorry." (N.T. Hearing, 1/08/14, at 15). Appellant clearly acted with wrongful intent when he sent messages to and about [the victim] in violation of the PFA order, especially in light of [the victim's] continuous affirmation that she does not wish to be contacted by Appellant in any way, a fact that Appellant appears unwilling to accept.

(Trial Ct. Op., at 7-8) (emphasis added and citation formatting provided).

We agree with the trial court.

_(Footnote Continued)_ ―――――――――――

15, 2013." (Order, 1/09/14, at 1). Accordingly, for ease of discussion, that is the date that we also will use.

The April 15, 2013 PFA order modified a previously entered order to preclude Appellant from having "**any** contact of **any** type" with the victim. (Order, 4/15/13, at 1 (emphases added)). From July 9, 2013 through October 21, 2013, Appellant sent approximately eight letters containing messages for and about the victim. (*See* N.T. Hearing, 1/08/14, at 6-7). Although Appellant addressed the subject letters to third parties, they all gave them to her to open. (*See id.* at 5, 7, 18-19). In the letters addressed to the victim's boss, Appellant alleged that the victim "was deceiving and manipulating the mail." (*Id.* at 9). In the August, 2013 letter, Appellant wrote:

> I think about [the victim] all the time, all day before bed. Wake up she is on my mind and you guys too. I need you in my life. . . . I love mom. . . . I love your mother more than anyone will know. . . . I want my wife back. . . . The love of my life. . . . You know what to do I hope. . . . [H]appy 24th anniversary, [Victim].

(*Id.* at 9-11). In that approximately twelve-page letter, Appellant writes about songs he and the victim used to listen to, the roses he sent to the victim and each one's meaning, his relationship with the victim, and the fact that "he wants to have a happy marriage." (*Id.* at 11).

Corporal Mumma testified that he has taken reports about Appellant's violations of the PFA order between the parties. (*See id.* at 13). He described the September 16, 2013 letter as containing artwork of a cross and heart and Appellant's signature, "Wayne, dad, poppy, and hubby." (*Id.*

at 15; *see id.* at 14-15). He also read portions of the September 16, 2013 letter into evidence, in which Appellant stated:

> There is no one going to tell me I don't tell my wife and sons I have them after 26 years of being together. . . . They are out of their fucking minds for real. . . . I miss you all the most, especially mom in bed with me, smelling her, touching her, having her hair in my face, rubbing her leg up and down my leg before she goes to sleep. . . . Tell mom I love her always and forever and I'm sorry.

(*Id.* at 15).

Finally, in the October 18, 2013 letter, Appellant directed its recipient to "[g]ive [the victim] a hug and kiss for me. Don't tell her they're from me. I don't want any trouble from the law." (*Id.* at 16).

Based on the foregoing, we conclude that the trial court did not abuse its discretion when it found that the Commonwealth met its burden of proving Appellant's wrongful intent to communicate with the victim through third parties, which is a violation of the PFA's prohibition against "any contact of any type." (Order, 4/15/13, at 1); *see also Moreno*, *supra* at 136; *Brumbaugh*, *supra* at 110; (*see also* Order, 4/15/13, at 1). Accordingly, we conclude that Appellant's first issue is "wholly frivolous." *Lilley*, *supra* at 998.

In his second issue, Appellant claims that "[t]he [trial] [c]ourt's [f]inding of [c]ontempt [w]as [c]ontrary [t]o [t]he [w]eight [o]f [t]he

[e]vidence." (**Anders** Brief, at 13).[3]  Specifically, Appellant argues that, "[b]y ignoring [Appellant's] direction to [his] son [not to share the letters with the victim until he was older], the [trial] court, as factfinder, rendered a verdict which was so contrary to the evidence as to shock one's sense of justice." (**Id.** at 14; **see id.** at 13).  We disagree.

Our standard of review of a challenge to the weight of the evidence is well-settled:

> [T]he weight of the evidence is exclusively for the finder of fact who is free to believe all, part, or none of the evidence and to determine the credibility of the witnesses.  An appellate court cannot substitute its judgment for that of the finder of fact.  Thus, we may only reverse the [trial] court's verdict if it is so contrary to the evidence as to shock one's sense of justice.

**Moreno**, **supra** at 135 (citation omitted).  To succeed on a challenge to the weight of the evidence, "the evidence must be so tenuous, vague and uncertain that the verdict shocks the conscience of the [C]ourt." **Commonwealth v. Shaffer**, 722 A.2d 195, 200 (Pa. Super. 1998), *appeal denied*, 739 A.2d 165 (Pa. 1999) (citation omitted).

Here, the trial court based its verdict on the credibility of the victim and Corporal Mumma, with whom it "has extensive experience . . . through

_____

[3] Appellant failed to raise a weight of the evidence claim in his post-sentence motion.  Generally, this would result in waiver.  **See** Pa.R.Crim.P. 607(A); **Commonwealth v. Barnhart**, 933 A.2d 1061, 1066 (Pa. Super. 2007).  However, because we are required to conduct our "own review of the trial court's proceedings and render an independent judgment as to whether the appeal is, in fact, wholly frivolous," **Lilley**, **supra** at 998 (citation omitted), we will review this issue on its merits.

the myriad PFA and criminal actions resulting from Appellant's conduct toward [the victim]." (Trial Ct. Op., at 10). Because "the evidence [was not] so tenuous, vague and uncertain that the verdict shocks the conscience of the [C]ourt," *Shaffer*, *supra* at 200, we decline Appellant's invitation "to substitute [our] judgment for that of the finder of fact," *Moreno*, *supra* at 135. (*See Anders* Brief, at 13-14). The trial court properly exercised its discretion and its verdict does not shock the conscience. Accordingly, we conclude that Appellant's second issue is "wholly frivolous." *Lilley*, *supra* at 998.

In his third issue, Appellant challenges the discretionary aspects of his sentence. (*See id.* at 11, 14-15). This issue does not merit relief.

It is well-settled that:

[w]hen challenging the discretionary aspects of the sentence imposed, an appellant must present a substantial question as to the inappropriateness of the sentence. Two requirements must be met before we will review this challenge on its merits. First, an appellant must set forth in his brief a concise statement of the reasons relied upon for allowance of appeal with respect to the discretionary aspects of a sentence. Second, the appellant must show that there is a substantial question that the sentence imposed is not appropriate under the Sentencing Code. That is, the sentence violates either a specific provision of the sentencing scheme set forth in the Sentencing Code or a particular fundamental norm underlying the sentencing process. We examine an appellant's Rule 2119(f) statement to determine whether a substantial question exists. Our inquiry must focus on the **reasons** for which the appeal is sought, in contrast to the **facts** underlying the appeal, which are necessary only to decide the appeal on the merits.

***Commonwealth v. Ahmad***, 961 A.2d 884, 886-87 (Pa. Super. 2008) (citations, quotation marks, and footnote omitted).[4]

Here, in his Rule 2119(f) statement, Appellant claims that "the [trial] court's imposition of" a sentence of not less than three nor more than six months' incarceration "is excessive given the loving nature of the messages." (***Anders*** Brief, at 11). We conclude that this does not raise a substantial question where Appellant fails to allege that "the sentence violate[d] either a specific provision of the sentencing scheme set forth in the Sentencing Code or a particular fundamental norm underlying the sentencing process." ***Ahmad***, ***supra*** at 886 (citation omitted).

Additionally, Appellant's claim is a challenge to the court's failure to consider mitigating factors. (***See Anders*** Brief, at 15 (arguing that the trial court inappropriately "applied its discretion in assessing the weight of the[] mitigating factor[]" of "the loving nature of [his] communications")). However, an argument that the court failed to consider mitigating factors does not raise a substantial question, either. ***See Commonwealth v. Moury***, 992 A.2d 162, 175 (Pa. Super. 2010) ("That the court refused to

---

[4] Appellant arguably raised this issue in his post-sentence motion. (***See*** Post-Sentence Motion for Reconsideration, 1/17/14, at unnumbered page 2); ***see also Commonwealth v. Foster***, 960 A.2d 160, 163 (Pa. Super. 2008), *affirmed*, 17 A.3d 332 (Pa. 2011) (noting that to preserve claims relating to discretionary aspects of sentence properly, appellant must first raise them with trial court). Therefore, we give Appellant the benefit of the doubt and review his claim.

weigh the proposed mitigating factors as Appellant wished, absent more, does not raise a substantial question.") (citations omitted). Moreover, our independent review of the record reveals that the court did not abuse its discretion in sentencing Appellant.

Our standard of review of a sentencing challenge is well-settled:

> Sentencing is a matter vested in the sound discretion of the sentencing judge, and a sentence will not be disturbed on appeal absent a manifest abuse of discretion. In this context, an abuse of discretion is not shown merely by an error in judgment. Rather, the appellant must establish, by reference to the record, that the sentencing court ignored or misapplied the law, exercised its judgment for reasons of partiality, prejudice, bias or ill will, or arrived at a manifestly unreasonable decision.

**Commonwealth v. Glass**, 50 A.3d 720, 727 (Pa. Super. 2012), *appeal denied*, 63 A.3d 774 (Pa. 2013) (citation omitted).

A sentence for indirect criminal contempt resulting from a violation of a PFA order may include "a fine of not less than $ 300 nor more than $ 1,000 and imprisonment of up to six months[.]" 23 Pa.C.S.A. § 6114(b)(1)(i)(A).

Here, the court sentenced Appellant to not less than three nor more than six months' incarceration. Therefore, Appellant's sentence was within the legal range.

Also, our review of the sentencing transcript reveals that the trial court provided ample reasoning in support of Appellant's sentence. Specifically, the court stated:

- 14 -

. . . I'm very familiar with the history in this case. It's been repetitive. [Appellant] has been told repeatedly that letters of this sort are a violation of the PFA [o]rder in that whether they are direct communication to [the victim] or third party communication, he has been aware that his children are not holding these letters and are regularly providing them to her.

In addition, the PFA [o]rder prescribes conduct that would constitute harassment. Certainly this falls into that context as well. So the violation here is not necessarily just communication with the protected party, but also course of conduct that is in my view harassing toward that person and while there are no direct threats of harm, if you're the recipient of these sort of letters repeatedly such that this is the fourth contempt violation, they are very threatening, very intimidating, and [the c]ourt takes it quite seriously.

(N.T. Hearing, 1/08/13, at 21).

Therefore, based on the foregoing, we conclude that the trial court did not abuse its discretion in imposing Appellant's sentence and Appellant has failed to offer any persuasive argument to support his request that we disturb it. **See Glass**, **supra** at 727. Accordingly, based on our own independent review of the record, we conclude that Appellant's third claim is "wholly frivolous" and does not merit relief. **Lilley**, **supra** at 998. Additionally, we find no other non-frivolous issues.

Judgment of sentence affirmed. Counsel's application to withdraw granted.

J-S48036-14

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 8/20/2014