J-S73009-17

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| THEODORE SAVAGE | : | |
| | : | |
| Appellant | : | No. 1707 MDA 2016 |

Appeal from the Order Entered September 29, 2016
In the Court of Common Pleas of Luzerne County Civil Division at No(s):
8131 of 2016

BEFORE:   OLSON, J., DUBOW, J., and STRASSBURGER*, J.

MEMORANDUM BY OLSON, J.:                    **FILED DECEMBER 18, 2017**

Appellant, Theodore Savage, appeals *pro se* from the judgment of sentence entered on September 29, 2016.[1]  We affirm.

On August 3, 2016, the trial court entered a temporary protection from abuse ("PFA") order against Appellant and in favor of S.S.  In relevant part, the temporary PFA order declares:

**The Court Hereby Orders:**

---

[1] Janan Tallo, Esquire represented Appellant during the indirect criminal contempt trial.  However, as the trial court explained, after the trial, Appellant expressed a desire to proceed *pro se* on appeal.  **See** Trial Court Correspondence, 1/3/17, at 1.  Therefore, the trial court held a hearing pursuant to **Commonwealth v. Grazier**, 713 A.2d 81 (Pa. 1988) and, "[a]t the close of the hearing, [Attorney] Tallo was permitted to withdraw from the case" and Appellant was permitted to proceed *pro se*.  Trial Court Correspondence, 1/3/17, at 1; **see also** Attorney Tallo's Correspondence, 1/17/17, at 1.

---

\*   Retired Senior Judge assigned to the Superior Court.

[X] [Appellant] shall not abuse, harass, stalk or threaten [S.S.] in any place where [she] might be found.

[X] . . . [Appellant] shall not contact [S.S.] . . . by telephone or by any other means, including through third persons.

[X] Additional findings of this order are set forth below.

Order Effective Date 8/3/16

. . .

[X] 1. [Appellant] shall not abuse, harass, stalk or threaten [S.S.] . . . in any place where [she] might be found.

[X] 2. [Appellant] shall be evicted and excluded from the residence at: [location of the residence]. . . . [Appellant] shall have no right or privilege to enter or be present on the premises of [S.S.] . . . .

[X] 3. . . . [Appellant] is prohibited from having **ANY CONTACT** with [S.S.], either directly or indirectly, . . . at any location, including but not limited to any contact at [S.S.'s] school, business, or place of employment. . . .

Temporary PFA Order, 8/3/16, at 1-5 (emphasis in original).

Appellant was served with the temporary PFA order on the day it was issued, which was August 3, 2016. *See* N.T. Trial, 9/29/16, at 63.

On August 9, 2016, the trial court entered a final PFA order against Appellant and in favor of S.S. The final PFA order was effective for three years from the date of issuance and the order repeated the prohibitions contained in the temporary PFA order. *See* Final PFA Order, 8/9/16, at 1-8.

On August 15, 2016, the Commonwealth filed a criminal complaint against Appellant and charged him with criminal contempt for violating the

temporary PFA order; specifically, the Commonwealth charged, on August 4, 2016, Appellant violated the temporary PFA order by entering S.S.'s residence. Criminal Complaint, 8/15/16, at 1-3.

On September 8, 2016, the Commonwealth filed another criminal complaint against Appellant and charged him with criminal contempt for violating the final PFA order. According to this criminal complaint:

> [S.S] was contacted on 08/22/16 at approximately [8:55 p.m.] by a female. The female did not identify herself and called from a wireless phone. . . . The female voice related that if [S.S.] would withdraw the allegation that put the PFA in place, then [Appellant] would return a vehicle that is registered to [S.S.]. The female caller then threatened to start an investigation into a family member of [S.S.] for labor practices based on knowledge of [Appellant]. The caller then stated that if [S.S.] continued with the court proceeding she would be in much more trouble than [Appellant] is in. The caller was unknown by name but assumed by [S.S.] to be the current girlfriend of [Appellant].

Criminal Complaint, 9/8/16, at 2.

On September 29, 2016, the trial court held a trial on the two indirect criminal contempt charges. S.S. testified during trial that, on August 4, 2016, she was inside of her home when Appellant opened the door and entered the home. N.T. Trial, 9/29/16, at 26. S.S. testified that, after Appellant entered her home, they looked at each other, they "both froze," and S.S. said "[w]hat are you doing here." *Id.* S.S. testified that, after her dog ran towards her, Appellant "turned around and ran out the front door and jumped in my truck and stole that, too." *Id.*

The Commonwealth also introduced evidence of text messages that were sent to S.S.'s cell phone, which (according to S.S.'s testimony) declared that "[S.S.] would get [her] car back if [she] dropped everything." *See id.* at 30-33.

Appellant's girlfriend, Rose Smetana, also testified at the trial. Ms. Smetana testified that Appellant was with her all day on August 4, 2016 and "he was not near [S.S.] at all" that day; further, with respect to the text messages, Ms. Smetana testified that she texted S.S. and that she did so without Appellant's knowledge. *Id.* at 42-48.

Finally, Appellant testified in his own defense and declared that he "never went back to that residence from the time the initial PFA was issued" and that he did not know that Ms. Smetana had contacted S.S. *Id.* at 68-70.

At the conclusion of the trial, the trial court found Appellant guilty of the first count of indirect criminal contempt (with respect to Appellant's unlawful, August 4, 2016 entry into S.S.'s residence) but not guilty of the second count of indirect criminal contempt (with respect to the allegation that Appellant directly or indirectly contacted S.S. *via* text message). *Id.* at 81. On September 29, 2016, the trial court sentenced Appellant to serve a term of six months of probation for his indirect criminal contempt conviction. *Id.* at 84.

Appellant filed a timely notice of appeal. Appellant now raises three claims to this Court:

[1.] Whether the evidence was insufficient to sustain the trial court's finding of guilt, where the trial court misunderstood the nature of the proceeding as it relates to the burden of proof, in turn depriving [Appellant of] his right to a fair trial and due process guaranteed by both the Pennsylvania and United States Constitutions?

[2.] Whether [Appellant] was deprived [of] his state and federally protected right to a "public trial," where PFA proceedings heard by the Court of Common Pleas of Luzerne County[] are not open to the public, but only parties and their [attorneys] are allowed in the courtroom, where court staff post up at the courtroom door with a list of parties, and those not on the list are not permitted to enter the courtroom?

[3.] Alternatively, whether Appellant is entitled to a remand with leave to file a post-sentence motion *nunc pro tunc* in this case where the record is clear that the trial court fail[ed] to inform Appellant of his right and the time frame to a post-sentence motion, to properly litigate these claims in the trial court in the first instance and preserve same for proper [appellate] court review on direct appeal?

Appellant's Brief at 3 (some internal capitalization omitted).

First, Appellant claims that the evidence was insufficient to support his indirect criminal contempt conviction because "the trial court misunderstood the nature of the proceeding as it relates to the burden of proof." ***Id.*** At the outset, with respect to any sufficiency of the evidence claim:

The standard we apply in reviewing the sufficiency of the evidence is whether viewing all the evidence admitted at trial in the light most favorable to the verdict winner, there is sufficient evidence to enable the fact-finder to find every element of the crime beyond a reasonable doubt. In applying the above test, we may not weigh the evidence and substitute our judgment for [that of] the fact-finder. In addition, we note that the facts and circumstances established by the Commonwealth need not preclude every

possibility of innocence. Any doubts regarding a defendant's guilt may be resolved by the fact-finder unless the evidence is so weak and inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances. The Commonwealth may sustain its burden of proving every element of the crime beyond a reasonable doubt by means of wholly circumstantial evidence. Moreover, in applying the above test, the entire record must be evaluated and all evidence actually received must be considered. Finally, the trier of fact while passing upon the credibility of witnesses and the weight of the evidence produced, is free to believe all, part or none of the evidence.

*Commonwealth v. Brown*, 23 A.3d 544, 559-560 (Pa. Super. 2011) (*en banc*) (internal quotations and citations omitted).

Appellant was convicted of indirect criminal contempt. As this Court has explained:

A charge of indirect criminal contempt consists of a claim that a violation of an Order or Decree of court occurred outside the presence of the court. Where a PFA order is involved, an indirect criminal contempt charge is designed to seek punishment for violation of the protective order. As with those accused of any crime, one charged with indirect criminal contempt is to be provided the safeguards which statute and criminal procedures afford. To establish indirect criminal contempt, the Commonwealth must prove: 1) the Order was sufficiently definite, clear, and specific to the contemnor as to leave no doubt of the conduct prohibited; 2) the contemnor had notice of the Order; (3) the act constituting the violation must have been volitional; and 4) the contemnor must have acted with wrongful intent.

*Commonwealth v. Brumbaugh*, 932 A.2d 108, 110 (Pa. Super. 2007) (internal quotations and citations omitted).

Within Appellant's brief to this Court, Appellant does not argue that the evidence was insufficient to support his indirect criminal contempt

conviction, as Appellant does not claim that the Commonwealth failed to prove any specific element of his conviction.[2]  **See** Appellant's Brief at 10-13.  Rather, Appellant speculates that the trial court "did not understand the nature of the proceedings, *i.e.*, that 'indirect criminal contempt' is criminal in nature, requiring the Commonwealth to [prove] guilt beyond a reasonable doubt, not by a preponderance of [the] evidence."  **Id.** at 11.  This claim of error concerns an alleged due process violation, not the sufficiency of the evidence.  **See**, **e.g.**, **In re Winship**, 397 U.S. 358, 364 (1970) ("the Due Process Clause protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged").

Regardless of the manner by which Appellant styles his claim, the claim is meritless, as the trial court did not apply an incorrect burden of proof at trial.  As the trial court declared in its opinion:

---

[2] We note that the evidence is indeed sufficient to support Appellant's indirect criminal contempt conviction, as:  1) the temporary PFA order specifically and clearly declared that "[Appellant] shall be evicted and excluded from the residence at: [location of the residence]. . . . [Appellant] shall have no right or privilege to enter or be present on the premises of [S.S.];" 2) Appellant admitted that he was served with the temporary PFA order on August 3, 2016; and, 3) S.S. testified that, on August 4, 2016, Appellant entered her residence and ran away when he saw S.S.  Temporary PFA Order, 8/3/16, at 1-5; N.T. Trial, 9/29/16, at 26 and 63.  Thus, the evidence is sufficient to support Appellant's indirect criminal contempt conviction.

> [Appellant's] argument that the [trial] court applied the wrong burden of proof appears to be based solely upon the [trial] court's comments following the finding of guilt. Specifically, the court stated, "[s]o violation [one], I think he was on the property." [N.T. Trial, 9/29/16, at 80]. Despite [Appellant's] interpretations, this statement was not an expression of the burden of proof by the court. Rather, the court was merely commenting on its finding of fact that [Appellant] was at the home on the day of the [] violation. Because the court was satisfied beyond a reasonable doubt that [Appellant] was at the home on August 4, 2016, in violation of the temporary PFA order, of which he had notice, it found him guilty of indirect criminal contempt and imposed sentence.

Trial Court Opinion, 2/7/17, at 12 (some internal capitalization omitted).

The trial court did not apply an incorrect burden of proof at trial; therefore, Appellant's claim fails.

Next, Appellant claims that the trial court deprived him of his right to a public trial because his girlfriend, Rose Smetana, (who testified for Appellant at trial) was not allowed to enter the courtroom.[3] Appellant's Brief at 13; *see also* N.T. Trial, 9/29/16, at 20-22. This claim is meritless because, as the trial court explained, Ms. Smetana was merely **sequestered**. Trial Court Opinion, 2/7/17, at 17-18; *see also* N.T. Trial, 9/29/16 at 22-23 (trial court orders that Ms. Smetana be sequestered because she was testifying in

---

[3] Within Appellant's brief, Appellant claims that, on the day of his trial, the trial court excluded other friends and family from entering the courtroom. *See* Appellant's Brief at 13. Appellant did not raise these concerns at trial; rather, during trial, Appellant only claimed that his girlfriend, Rose Smentana, was denied entry into the courtroom. N.T. Trial, 9/29/16, at 20-22. Therefore, Appellant has waived any claim with respect to the other individuals. Pa.R.A.P. 302(a) ("[i]ssues not raised in the lower court are waived and cannot be raised for the first time on appeal").

the case). Further, the trial court specifically informed Appellant that Ms. Smetana "could remain in the courtroom following her testimony." Trial Court Opinion, 2/7/17, at 17-18; N.T. Trial, 9/29/16 at 23 (trial court declared: "So when your girlfriend has to testify, we'll bring her in. And then after she testifies, she can stay in. Okay. That's generally how it's done").

Simply stated, the sequestration of Ms. Smetana prior to her testimony in the case did not deprive Appellant of a public trial. **See**, **e.g.**, **Commonwealth v. Yount**, 314 A.2d 242, 250 (Pa. 1974) ("the question of sequestration of witnesses is left largely to the discretion of the trial [j]udge and his decision thereon will be reversed only for a clear abuse of discretion") (internal quotations and citations omitted). Appellant's claim to the contrary is frivolous.

Finally, Appellant claims that the trial court erred when it failed to inform him of his right to file a post-sentence motion and a notice of appeal. According to Appellant, if the two claims he raises on appeal "are not properly preserved, or waived by the failure of such claims being raised in a post-sentence motion," this Court must remand and direct that the trial court grant him leave to file a post-sentence motion *nunc pro tunc*. Appellant's Brief at 17.

We note that the trial court indeed failed to inform Appellant of his right to file a post-sentence motion and a notice of appeal. **See** N.T. Trial, 9/29/16, at 84. However, this failing did not cause Appellant prejudice, as

Appellant filed a timely notice of appeal and Appellant did not need to file a post-sentence motion in order to preserve the claims he currently raises on appeal. Therefore, Appellant is not entitled to relief on his final claim. ***See***, ***e.g.***, ***Commonwealth v. Watson***, 945 A.2d 174, 177 (Pa. Super. 2008) ("[h]armless error exists when . . . the error did not prejudice the defendant or the prejudice was *de minimus*. . .") (internal quotations and citations omitted).

Judgment of sentence affirmed. Jurisdiction relinquished.


Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 12/18/2017