**COMMONWEALTH of Pennsylvania,**
**Appellee**

v.

**David BRUMBAUGH, II, Appellant.**

Superior Court of Pennsylvania.

Argued May 23, 2007.

Filed July 31, 2007.

Charles A. Pascal, Jr., Public Defender, Kittaning, for appellant.

Scott J. Andreassi, Assistant District Attorney, Kittaning, for Commonwealth, appellee.

BEFORE: HUDOCK, TODD and TAMILIA, JJ.

OPINION BY TAMILIA, J.:

¶ 1 David Brumbaugh, II, appeals from the August 28, 2006, judgment of sentence ordering him to pay a $300 fine and the costs associated with his prosecution and sentencing him to six months probation. The sentence was imposed immediately after appellant was found to be in indirect criminal contempt[1] of a Protection From Abuse Order. We affirm.

¶ 2 The trial court set forth the relevant facts and procedural history of this case as follows.

> The Court entered a Protection from Abuse Order on February 10, 2006 on the petition of April Rothwell, on behalf of her daughter, Ariyelle Davis. The Protection from Abuse Order is entered at No. 2006–0202–Civil. Reference is made to that number and specifically to that Order. The Order was a consent order and was signed by the Defendant. Paragraph 3 of the Order provides in pertinent part as follows:
>
> > 3. Defendant is prohibited from having **ANY CONTACT** with the Plaintiff, or any other person protected under this Order, at any location, including but not limited to any contact at Plaintiff's school business, or place of employment ...
>
> At the non-jury trial, Ariyelle Davis, age 16, (Defendant was age 20 at the time of the incident) testified that Defendant is a former boyfriend. On July 17, 2006 she and some friends were going to attend a birthday party. She called the Defendant who joined Ariyelle in the car and attended the party with Ariyelle and her friends. On the way home after the party, the driver of the car was stopped by the police. Defendant was a passenger along with Ariyelle. Ariyelle gave the police a false

> name when asked to identify herself. She was taken to a friend's house and returned to the place they were stopped where she was met by her step-father.

Trial Court Opinion, Nickleach, P.J., 9/1/06, at 1–2 (emphasis in original). As previously noted, appellant was found guilty and was sentenced on August 28, 2006. Record, No. 4. Thereafter, appellant filed an oral post-sentence motion to dismiss which was denied on September 1, 2006, and this timely appeal followed. Record, Nos. 6, 7.

¶ 3 Appellant argues "the Commonwealth's evidence against [him] was insufficient to prove each of the elements of Indirect Criminal Contempt beyond a reasonable doubt." Appellant's brief at 5, 9. Our standard of review in assessing whether sufficient evidence was presented to sustain appellant's conviction is well-settled.

> The standard we apply in reviewing the sufficiency of the evidence is whether viewing all the evidence admitted at trial in the light most favorable to the verdict winner, there is sufficient evidence to enable the fact-finder to find every element of the crime beyond a reasonable doubt. In applying [the above] test, we may not weigh the evidence and substitute our judgment for the fact-finder. In addition, we note that the facts and circumstances established by the Commonwealth need not preclude every possibility of innocence. Any doubts regarding a defendant's guilt may be resolved by the fact-finder unless the evidence is so weak and inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances. The Commonwealth may sustain its burden of proving every element of the crime be-

1. 23 Pa.C.S.A. § 6114.

yond a reasonable doubt by means of wholly circumstantial evidence. Moreover, in applying the above test, the entire record must be evaluated and all evidence actually received must be considered. Finally, the trier of fact while passing upon the credibility of witnesses and the weight of the evidence produced, is free to believe all, part or none of the evidence.

*Commonwealth v. DiStefano,* 782 A.2d 574, 582 (Pa.Super.2001) (citations and quotations omitted).

¶ 4 A charge of indirect criminal contempt consists of a claim that a violation of an Order or Decree of court occurred outside the presence of the court. *Commonwealth v. Padilla,* 885 A.2d 994 (Pa.Super.2005). "Where a PFA order is involved, an indirect criminal contempt charge is designed to seek punishment for violation of the protective order." *Id.* at 996. As with those accused of any crime, "one charged with indirect criminal contempt is to be provided the safeguards which statute and criminal procedures afford." *Id.* at 996–97 (citation omitted). To establish indirect criminal contempt, the Commonwealth must prove: 1) the Order was sufficiently definite, clear, and specific to the contemnor as to leave no doubt of the conduct prohibited; 2) the contemnor had notice of the Order; (3) the act constituting the violation must have been volitional; and 4) the contemnor must have acted with wrongful intent. *Commonwealth v. Ashton,* 824 A.2d 1198, 1202 (Pa.Super.2003).

¶ 5 Here, the PFA Order at issue clearly prohibited appellant "from having ANY CONTACT with the Plaintiff," and appellant, in fact, had notice of this Order after consenting to it in writing. It is further undisputed that appellant nevertheless agreed to attend, and did attend, a party with the minor victim after she called him,

thereby willfully violating the Order. N.T., 8/28/06, at 5–7. Furthermore, we reject appellant's claim this case is analogous to *Commonwealth v. Haigh,* 874 A.2d 1174 (Pa.Super.2005), or that the Commonwealth failed to prove he acted with wrongful intent. Appellant's brief at 11–14. As the court noted in its Opinion, our decision in *Haigh* "was decided on a very narrow factual basis and is clearly distinguishable from the case at bar." Trial Court Opinion at 2.

In *Haigh,* the defendant was prohibited from contacting his wife of 31 years by a PFA Order dated August 21, 2003. Less than six (6) months later, after learning by way of letter that his wife had a mass removed from her breast, the defendant attempted to contact her by letter and phone. The letter defendant received did not state whether the mass was malignant or benign. At a hearing held on January 15, 2004, defendant was brought to the courtroom in shackles. During the course of the hearing, the defendant, still shackled, "shuffled slightly towards his wife, leaned over and asked her, 'Are you okay on top?'." He also asked her to write him about her prognosis. The defendant was charged with Indirect Criminal Contempt because of his action. At trial neither Mrs. Haigh nor the deputy sheriff testified that defendant did or said anything threatening. Mrs. Haigh added she did not feel threatened under the circumstances. The Trial court found defendant guilty. The Superior Court reversed . . .

. . .

In the case *sub judice* . . . . It was apparent that the relationship between the victim and the Defendant had not ended for the victim called the Defendant and asked him to join her at the

birthday party. Defendant knowing he was under a PFA Order to have no contact with the victim that evening nevertheless went to the party with her. He was not drugged, forced, or threatened. His clear intent was to be in contact with her notwithstanding the PFA Order. The victim and the Defendant did not have the long-term relationship the parties had in *Haigh* nor was the victim suffering any serious illness, which would warrant the Defendant's concern. Moreover, the contact was not made in a courtroom setting while the Defendant was in shackles with an armed deputy sheriff (and even a judge) present.

*Id.* at 3–5. Thus, appellant's act was clearly volitional, or knowingly made, and wrongful intent can be imputed by virtue of the substantial certainty that by choosing to accept the victim's invitation to travel with her in the same vehicle to a party, he would be in contact with her in violation of the PFA Order. "When reviewing a contempt conviction ... we are confined to a determination of whether the facts support the trial court decision. We will reverse a trial court's determination only when there has been a plain abuse of discretion." *Commonwealth v. Kolansky,* 800 A.2d 937, 939 (Pa.Super.2002) (citations omitted). Based on the foregoing, we find ample evidence to support appellant's conviction for indirect criminal contempt.

¶ 6 Judgment of sentence affirmed.