J-S25033-18

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

COMMONWEALTH OF PENNSYLVANIA : IN THE SUPERIOR COURT OF
                                   :              PENNSYLVANIA
                                   :
           v.                       :
                                   :
                                   :
CHRISTOPHER ALLEN LEACH         :
                                   :
           Appellant             :    No. 1596 WDA 2017

Appeal from the Judgment of Sentence September 29, 2017
In the Court of Common Pleas of Blair County
Criminal Division at No(s): CP-07-MD-0001570-2017

BEFORE: GANTMAN, P.J., PANELLA, J., and OTT, J.

MEMORANDUM BY OTT, J.:                           **FILED JUNE 27, 2018**

Christopher Allen Leach appeals from the judgment of sentence imposed on September 29, 2017, in the Court of Common Pleas of Blair County. Following a non-jury trial, the trial court found Leach guilty of indirect criminal contempt from a Protection From Abuse (PFA) order[1] and sentenced him to pay the statutorily imposed costs of prosecution and a fine of three hundred dollars ($300). The sole issue raised by Leach in this appeal is a challenge to the sufficiency of the evidence. Based upon the following, we conclude the evidence was insufficient to sustain Leach's conviction for indirect criminal contempt, and, accordingly, we vacate the judgment of sentence.

_____

[1] *See* 23 Pa.C.S.A. § 6114(a).

The facts underlying Leach's conviction are as follows. On Friday September 8, 2017, Danielle Dupuis obtained an Emergency PFA Order ("Order") against Leach at an *ex parte* hearing before Magisterial District Judge Steven D. Jackson. *See* Order Granting Emergency Relief from Abuse, 9/8/2017, at 1. This action was a result of Leach's September 6, 2017, arrest for aggravated assault[2] and related charges, of which Dupuis was the victim. *See* N.T., 10/27/17, at 4. The Order prohibited Leach from contacting her, and evicted him from their shared residence. *See* Order Granting Emergency Relief from Abuse, 9/8/2017, at 1. On the evening of Friday, September 8, 2017, Leach posted bail for the above charges, and at 8:00 PM that same day, Officer Fred Wasser served the Order on Leach at the prohibited residence. *See* N.T., 10/27/2017, at 32-33.

The Order stated, in relevant part: "These orders expire at the end of the next business day the Court of Common Pleas deems itself available. These orders will be immediately certified to the Court of Common Pleas, which has the effect of commencing proceedings against you…" Order Granting Emergency Relief from Abuse, 9/8/2017, at 1. Over that weekend, Leach claims he called the PFA office and the Sheriff, but neither office could confirm the Order's expiration date. *See* N.T., 10/27/2017, at 34-35.

---

[2] *See* 18 Pa.C.S.A. § 2702.

The "next business day" after the issuance of the Order was Monday, September 11, 2017.[3] *Id.* at 47. Thereafter, on September 12, 2017, Leach returned to the prohibited residence to retrieve his belongings with his sister and her boyfriend. *See* N.T., 10/27/2017, at 24-25. Dupuis was not home at the time, and when Leach arrived, the locks were changed and the window was covered with a wood panel. *See id.* at 17-18. His sister then called Dupuis, alerting her to Leach's presence at the residence and causing her to call the police. *See id.* at 16-17. Officer Joseph Detwiler, who responded to Dupuis' call, testified that Leach was seen exiting the residence. *See id.* at 24. Additionally, a glass panel on the door of the residence had been broken and the wood panel covering the window had been pried off. However, none of Dupuis' belongings were missing. *See id.* at 20. Upon questioning by Officer Detwiler, Leach initially denied any knowledge of the PFA. *See id.* at 25. After confirming the existence of the Order, the officer arrested Leach. *See id.* at 26-27.

The case proceeded to a hearing conducted on September 29, 2017, at the conclusion of which the trial court found Leach guilty of indirect criminal contempt, and sentenced him to pay the statutorily imposed costs of

---

[3] While the Commonwealth suggests an extended Temporary PFA was granted that day, there is nothing in the certified record to confirm this or to demonstrate that Leach was properly served with a new order. *See* Commonwealth's Brief at 8. The only evidence of the existence of a Temporary Order is contained in a docket entry appended to the Commonwealth's brief. *See id.*, Exhibit 1.

prosecution and a three hundred dollar ($300) fine. Leach filed this timely appeal and complied with the trial court's order to submit a Pa.R.A.P. 1925(b) concise statement of matters complained of on appeal.

In his sole issue on appeal, Leach challenges the sufficiency of the evidence supporting his conviction for indirect criminal contempt. *See* Leach's Brief at 8.

Our standard of review of a claim challenging the sufficiency of the evidence is as follows:

> The standard we apply in reviewing the sufficiency of the evidence is whether viewing all the evidence admitted at trial in the light most favorable to the verdict winner, there is sufficient evidence to enable the fact-finder to find every element of the crime beyond a reasonable doubt. In applying [the above] test, we may not weigh the evidence and substitute our judgment for the fact-finder. In addition, we note that the facts and circumstances established by the Commonwealth need not preclude every possibility of innocence. Any doubts regarding a defendant's guilt may be resolved by the fact-finder unless the evidence is so weak and inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances. The Commonwealth may sustain its burden of proving every element of the crime beyond a reasonable doubt by means of wholly circumstantial evidence. Moreover, in applying the above test, the entire record must be evaluated and all evidence actually received must be considered. Finally, the trier of fact while passing upon the credibility of witnesses and the weight of the evidence produced, is free to believe all, part or none of the evidence.

***Commonwealth v. Brumbaugh***, 932 A.2d 108, 109-110 (Pa. Super. 2007).

"When reviewing a contempt conviction … we are confined to a determination

- 4 -

of whether the facts support the trial court decision. We will reverse a trial court's determination only when there has been a plain abuse of discretion."

***Id.*** at 111. Moreover,

> A charge of indirect criminal contempt consists of a claim that a violation of an Order or Decree of court occurred outside the presence of the court. Where a PFA order is involved, an indirect criminal contempt charge is designed to seek punishment for violation of the protective order… To establish indirect criminal contempt, the Commonwealth must prove: 1) the Order was sufficiently definite, clear, and specific to the contemnor as to leave no doubt of the conduct prohibited; 2) the contemnor had notice of the Order; [ ] 3) the act constituting the violation must have been volitional; and 4) the contemnor must have acted with wrongful intent.

***Id.*** at 110 (citations and quotation marks omitted).

Leach argues the Emergency PFA was not "definite, clear, and specific" because the expiration date of the Order was ambiguous.[4] Leach's Brief at 9. Leach points out that the Order stated its expiration would occur "the end of the next business day the Court of Common Pleas deems itself available," which he believed to be September 11, 2017, the day before his entrance onto the property. ***Id.*** at 5-8, *quoting* Order Granting Emergency Relief from Abuse, 9/8/2017, at 1.

Both the Commonwealth and the trial court agree that the Order expired on Monday, September 11, 2017. ***See*** Commonwealth's Brief at 7; Trial Court

---

[4] Leach does not dispute that the conduct itself described by the Order, that he was not to enter the residence, was unambiguous.

Opinion, 11/28/2017, at 3. The crux of the trial court's ruling is that the language in the Order, which states the dispute would be "immediately certified to the Court of Common Pleas," should have put Leach on notice that the Emergency PFA would be extended into a Temporary PFA and would be in effect past its stated expiration. Trial Court Opinion, 11/28/2017, at 3-4. The trial court also found that Leach's interaction with the police, during which he lied and stated that he had no knowledge of any PFA, establishes he knew a PFA **could** be in effect on September 12, 2017. *See id.* at 4. Moreover, the court noted Leach's calls to the PFA Office and Sheriff provided additional support for its conclusion Leach was aware of the possibility that his conduct could be a violation. *See id.* at 3-4.

However, our review of the Order in question and relevant statutory sections at issue reveals it was not definite that a Temporary PFA would be granted to extend the existing Emergency Order. Indeed, to extend an Emergency PFA, the Court of Common Pleas must hold an *ex parte* hearing to determine if an extended Temporary PFA is "necessary to protect the plaintiff or minor children." 23 Pa.C.S.A. § 6107(b). Petitions for Temporary Orders are not required to be granted. *See* 23 Pa.C.S.A. § 6110(b) (stating that only "necessary" orders will be continued). Leach could not have known whether Dupuis' petition for an extended order would be granted or denied, and it was therefore unclear whether his entrance onto the property on September 12, 2017, was prohibited. Furthermore, there is no evidence in the certified record

that the Order was extended. Because of the language in the Emergency Order indicating that it would expire at the end of the "next business day," and the lack of evidence concerning a replacement Order, we are constrained to conclude it was not certain Leach's conduct was prohibited by the PFA. Accordingly, we agree with Leach that the Order was not "sufficiently definite, clear, and specific" as to its expiration date, and hence he was not on notice that his conduct would be prohibited on September 12, 2017. **Brumbaugh**, **supra**, 932 A.2d at 110.

Additionally, Leach argues he did not possess the requisite "wrongful intent" to violate the PFA. Leach's Brief at 9. "[W]rongful intent can be imputed by virtue of the substantial certainty" that the defendant's conduct would be "in violation of the PFA Order." **Brumbaugh**, **supra**, 932 A.2d at 111. Trial courts must "use common sense and consider the context and surrounding factors in making their determinations of whether a violation of a court order is truly *intentional* before imposing sanctions of criminal contempt." **Commonwealth v. Haigh**, 874 A.2d 1174, 1177 (Pa. Super. 2005) (emphasis in original), *appeal denied*, 887 A.2d 1240 (Pa. 2005).

Leach maintains that because he did not intend to threaten Dupuis or cause her harm, he did not possess wrongful intent. He contends he "only retrieved his belongings" and "Dupuis was 70 miles away and was not threatened in any way." Leach's Brief at 9. He relies on **Haigh**, **supra**, to show that his lack of intent to do harm was material.

In **Haigh**, a panel of this Court reversed a defendant's conviction for indirect criminal contempt because the interaction between the defendant and his estranged wife, who had obtained a PFA against him, took place in a courtroom and was not threatening. **Haigh**, **supra**, 874 A.2d at 1178. The defendant, who was shackled and escorted by a deputy, inquired about his wife's health in court. **See id.** at 1176. The wife testified that she did not feel threatened by the exchange. **See id.** This Court reasoned that the defendant did not possess wrongful intent because he did not "[intend] to violate the final PFA order *and* because the infraction was both *de minimis* and non-threatening." **Id.** at 1178 (emphasis in original). Moreover, the panel noted, in a footnote, that the act did not fit the definition of indirect criminal contempt because it occurred in a courtroom. **See id.** at 1177 n.4.

The Commonwealth insists the ruling in **Haigh** is limited to "the peculiar circumstances of [that] case," and is not applicable outside of the courtroom. Commonwealth's Brief at 9, *quoting* **Haigh**, 874 A.2d at 1178. We agree. Furthermore, we note that in **Brumbaugh**, **supra**, a panel of this Court upheld a defendant's conviction of indirect criminal contempt even though the purported victim did not object to the contact, and, in fact, invited the defendant to the party he attended, which led to the violation. **See Brumbaugh**, **supra**, 932 A.2d at 110-111. The panel concluded the defendant's "act was clearly volitional, or knowingly made," because he knew

- 8 -

with "substantial certainty" that by attending the party he would be violating the PFA. *Id.* at 111.

Although Leach's reliance on *Haigh* is misplaced, we agree that the evidence did not support a finding that he acted with wrongful intent. If the Emergency PFA had still been in effect, Leach's entry onto the property would have been enough to establish wrongful intent, as in *Brumbaugh*. He does not dispute that his conduct was volitional or that his entrance on the property was prohibited under the terms of the PFA. Moreover, it is immaterial that he was merely there to retrieve his belongings or that he did not mean to harm or threaten Dupuis. However, as discussed above, the Emergency PFA had expired by the time Leach entered Dupuis' residence, and there was no evidence presented that he knew the PFA had been extended. Because Leach did not know with "substantial certainty" that he was in violation of the PFA, we conclude he did not possess the requisite wrongful intent. *Brumbaugh*, *supra*, 932 A.2d at 111.

Accordingly, because we conclude the evidence was insufficient to sustain Leach's only conviction, we vacate the judgment of sentence.

Judgment of sentence vacated.

President Judge Gantman joins the memorandum.

Judge Panella concurs in the result.

Judgment Entered.

- 9 -

Joseph D. Seletyn, Esq.
Prothonotary

Date:  6/27/2018