J. S66039/19

**NON-PRECEDENTIAL DECISION – SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| v. | : | |
| | : | |
| MONTRAY CHERRY, | : | No. 2293 EDA 2018 |
| | : | |
| Appellant | : | |

Appeal from the Judgment of Sentence Entered July 19, 2018,
in the Court of Common Pleas of Philadelphia County
Criminal Division at No. MC-51-CR-0002492-2018

BEFORE: STABILE, J., NICHOLS, J., AND FORD ELLIOTT, P.J.E.

MEMORANDUM BY FORD ELLIOTT, P.J.E.:          **FILED MARCH 05, 2020**

Montray Cherry appeals from the July 19, 2018 judgment of sentence entered in the Court of Common Pleas of Philadelphia County after appellant was found guilty in a bench trial of indirect criminal contempt[1] for violating a temporary protection from abuse ("PFA") order. The trial court sentenced appellant to a six-month probationary term. We affirm.

The trial court set forth the following:

> Appellant's conviction stems from violations of a temporary PFA order entered against [a]ppellant by the Honorable Daniel Sulman on December 19, 2017. The victim initially filed a PFA petition against [a]ppellant on August 29, 2017 and Judge Sulman issued a temporary PFA order after an ***ex parte*** hearing on that date. The victim's PFA petition was dismissed two days later when she did not appear for the trial on that petition. She refiled her PFA petition

---
[1] 23 Pa.C.S.A. § 6114(a).

on December 19, 2017 and was again granted a temporary PFA order against [a]ppellant after an ***ex parte*** hearing. Only the December 19, 2017 Temporary PFA Order ("Temporary PFA Order") against [a]ppellant is relevant to this appeal.

The Temporary PFA Order provided that [a]ppellant "shall not contact [the victim], or any other person protected under this Order, by telephone or by any other means, including through third persons." The Order also evicted and excluded [a]ppellant from [the victim's] property and specifically ordered [a]ppellant to stay away from her place of employment, a daycare center. Further, the Temporary PFA Order stated [a]ppellant "shall not abuse, harass, stalk or threaten any of the above persons in any place where they might be found."

The Temporary PFA Order against [a]ppellant also granted [the victim] temporary physical custody of the parties' child. Though the written Temporary PFA Order did not specify how and when the child should be turned over to the victim, Judge Sulman orally instructed [a]ppellant to direct the child's godfather to take the child to the 18th Police District by 6:00 P.M. for the custody exchange.

The Temporary PFA Order expressly notified [a]ppellant of the consequences should he violate the Temporary PFA Order:

> [[a]ppellant] is hereby notified that the violation of this order may result in arrest for indirect criminal contempt, which is punishable by a fine of up to $1,000 and/or up to six months in jail. 23 P[a].C.S.A. § 6114. Consent of the [victim] to [appellant's] return to the residence shall not invalidate this Order, which can only be changed or modified through the filing of appropriate court papers for that purpose. 23 P[a.]C.S.A. § 6108([g]).

. . . .

[The victim] returned to her place of employment immediately after leaving the courthouse with her [T]emporary PFA Order. Shortly thereafter, [a]ppellant — who had already been served with the [Temporary PFA] Order at issue — appeared at the daycare center where [the victim] worked and spoke to [the victim's] boss for approximately thirty minutes.

Later that same day, [a]ppellant arrived at the 18th police district without their child. Upon talking to an officer, [a]ppellant eventually left and then returned to the police station with the child between 9:00 and 10:00 P.M. After exchanging some words with [a]ppellant, the victim began walking back to her residence — about three blocks from the police station — with the child. Throughout her walk home, [a]ppellant slowly drove his car next to her and attempted to talk to her. Appellant eventually got out of the car and approached the victim. He then tried to grab her, and more words were exchanged. Appellant proceeded to get back into his car, drove to the victim's residence, and again exited the vehicle and approached her outside her home.

As the victim stood on her porch, [a]ppellant threw baby diapers in her direction and said the following:

> You got something coming for you. Just watch and see. You just made it worse. Look, look, you're not going to keep me from seeing my son. This is why we're here today. You better get your good lawyer because you're going to need one. My family got money. You just watch. You just watch.

[The victim] gave the police a statement which was substantially consistent with her testimony. On January 25, 2018, [a]ppellant was arrested on charges of Contempt for Violation of a Court Order and Terroristic Threats. On July 19, 2018, the [trial court]

> presided over a non-jury trial where both parties testified as to what occurred on the date in question. Th[e trial c]ourt found that [the victim's] testimony was credible and that [a]ppellant's testimony was not.

Trial court opinion, 3/15/19 at 1-5 (record citations and footnotes omitted).

The record reflects that appellant was represented at trial by Attorney Derek Alan Steenson. Nothing in the record indicates that Attorney Steenson sought to withdraw after appellant's conviction. The record further reflects that following his conviction, appellant filed a notice of appeal on July 19, 2018.[2] On August 9, 2018, the notice of appeal was docketed in this court.

By correspondence dated August 9, 2018, this court notified Attorney Steenson that appellant's docketing statement was due by August 23, 2018. By order entered on the trial court docket on August 14,

---

[2] We note that the notice of appeal is a form notice of appeal from municipal court to the Court of Common Pleas, but bears a handwritten notation that it is an appeal from the judgment of sentence entered on July 19, 2018. We further note that the notice of appeal is not executed. The trial court concluded that appellant filed the notice of appeal **pro se**. (Trial court opinion, 3/15/19 at 3.) Our review of the record, however, indicates that Attorney Steenson filed the notice of appeal because the handwriting on the notice of appeal matches the handwriting on Attorney Steenson's executed entry of appearance in the underlying criminal matter, which, we note, was erroneously docketed as a "defense request for continuance newly retained or appointed." (**See** "defense request for continuance newly retained or appointed," 4/26/18.)

We further note that in its opinion, the trial court states that appellant filed his notice of appeal on August 9, 2018. August 9, 2018, however, was the date on which the notice of appeal was docketed in this court.

2018,[3] the trial court directed "[a]ppellant Montray Cherry" to file a concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(b) within 21 days. The record is silent as to whether the Rule 1925(b) order was served on Attorney Steenson, appellant, or both. Having received no response to this court's request that Attorney Steenson complete a docketing statement, this court entered an order on September 11, 2018, directing Attorney Steenson to file a docketing statement by September 21, 2018. As Attorney Steenson failed to do so, this court entered an order remanding the case to the trial court to conduct a hearing to determine, among other things, whether Attorney Steenson abandoned appellant.[4] (Order of court, 10/16/19.) The trial court held the hearing on November 8, 2018, at which appellant, Attorney Steenson, and the Commonwealth appeared. (Trial court "notice," 11/15/18.) The trial court determined that appellant was eligible for court-appointed counsel and appointed Attorney Steenson as appellate counsel. The trial court then issued a second Rule 1925(b) order. Appellant filed a timely response. The trial court thereafter filed its Rule 1925(a) opinion. This appeal is now ripe for our review.

Appellant raises the following issues:

> 1.   Did the [trial court] err regarding the required establishment of both volition and wrongful

---

[3] We note that the trial court docket sheet reflects that the order was entered on August 14, 2018, but that the order itself bears a time-stamp of "August 20, 2018."

[4] We note that this court retained jurisdiction. (Order of court, 10/16/18.)

intent as said elements relate to [appellant's] interaction with [the victim's] boss?

2. Did the [trial court] err regarding the required establishment of both volition and wrongful intent as said elements relate to [appellant's] interaction with [the victim] at the 18th Police District?

Appellant's brief at 6.

The standard we apply in reviewing the sufficiency of the evidence is whether viewing all the evidence admitted at trial in the light most favorable to the verdict winner, there is sufficient evidence to enable the fact-finder to find every element of the crime beyond a reasonable doubt. In applying [the above] test, we may not weigh the evidence and substitute our judgment for the fact-finder. In addition, we note that the facts and circumstances established by the Commonwealth need not preclude every possibility of innocence. Any doubts regarding a defendant's guilt may be resolved by the fact-finder unless the evidence is so weak and inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances. The Commonwealth may sustain its burden of proving every element of the crime beyond a reasonable doubt by means of wholly circumstantial evidence. Moreover, in applying the above test, the entire record must be evaluated and all evidence actually received must be considered. Finally, the trier of fact while passing upon the credibility of witnesses and the weight of the evidence produced, is free to believe all, part or none of the evidence.

***Commonwealth v. Brumbaugh***, 932 A.2d 108, 109-110 (Pa.Super. 2007)

(citation omitted).

A charge of indirect criminal contempt consists of a claim that a violation of an Order or Decree of court occurred outside the presence of the court. Where a PFA order is involved, an indirect criminal contempt

> charge is designed to seek punishment for violation of the protective order. As with those accused of any crime, one charged with indirect criminal contempt is to be provided the safeguards which statute and criminal procedures afford. To establish indirect criminal contempt, the Commonwealth must prove: 1) the Order was sufficiently definite, clear, and specific to the contemnor as to leave no doubt of the conduct prohibited; 2) the contemnor had notice of the Order; (3) the act constituting the violation must have been volitional; and 4) the contemnor must have acted with wrongful intent.

*Id.* at 110 (internal citations and quotation marks omitted).

In his first issue, appellant claims that the evidence was insufficient to support his conviction as it failed to demonstrate that he acted with volition and wrongful intent to violate the Temporary PFA Order when he went to the victim's place of employment because when he went there, he spoke to the victim's boss and not to the victim. (Appellant's brief at 7.) The Temporary PFA Order, however, "specifically ordered [appellant] to stay away from" the victim's place of employment. (Temporary PFA Order, 12/19/17 at 2, ¶ 3.) There is no dispute that appellant had notice that he was specifically ordered to stay away from the victim's place of employment and that he nevertheless chose to go there. Therefore, appellant's act of going to the victim's place of employment when ordered to stay away from that place was clearly volitional, or knowingly made, and wrongful intent can be imputed. Consequently, this claim fails.

In his second issue, appellant claims that the evidence was insufficient to support his conviction as it failed to demonstrate that he acted with volition

and wrongful intent to violate the Temporary PFA Order when he went to the 18th Police District because he went there to "give the baby's food and other items to [the victim]." (Appellant's brief at 8.) The trial court, however, found that appellant "violated the harassment portion of paragraph one when he followed [the victim] from the police station, went up to the [victim], and threw diapers at her." (Trial court opinion, 3/15/19 at 13.) There is no dispute that appellant had notice that he was prohibited from harassing the victim. Nevertheless, appellant chose to follow the victim, approach her, and throw diapers at her. Appellant's acts were clearly volitional, or knowingly made, and wrongful intent can be imputed. Therefore, this claim fails.

Viewing the evidence in the light most favorable to the Commonwealth as verdict winner, it was sufficient to enable the trial court, sitting as fact-finder, to find appellant guilty of indirect criminal contempt beyond a reasonable doubt because it demonstrated that appellant acted with volition and wrongful intent.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 3/5/20

- 8 -