J-A04043-20

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| C.L. | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| v. | : | |
| | : | |
| | : | |
| WILLIAM LEWIS | : | |
| | : | |
| Appellant | : | |
| | : | |
| --------------------------------------- | : | No. 1276 EDA 2019 |
| COMMONWEALTH OF PENNSYLVANIA | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| | : | |
| WILLIAM LEWIS | : | |
| | : | |
| Appellant | : | |
| | : | |

Appeal from the Order Entered March 18, 2019
In the Court of Common Pleas of Monroe County Domestic Relations at
No(s): 5626 CV 2018, 580 DR 2016

BEFORE:   PANELLA, P.J., STRASSBURGER, J.*, and COLINS, J.*

MEMORANDUM BY COLINS, J.:                    **FILED MARCH 12, 2020**

Appellant, William Lewis ("Husband"), appeals from the contempt order entered on March 18, 2019, for his violation of a Protection from Abuse ("PFA") order between Appellant and his wife, C.L. ("Wife"). Following a contempt hearing, the trial court found Husband in indirect criminal contempt ("ICC") and extended the PFA order for an additional two years. We affirm.

_____

* Retired Senior Judge assigned to the Superior Court.

In order to provide context for the current appeal, we begin with the history of the underlying PFA action:

> The parties wed after just three weeks of dating when Husband was 46 and Wife was 20.  Their five-year marriage produced a . . . daughter and extensive litigation, replete with protective orders, contempt violations and criminal charges.  Not until the [underlying] PFA hearing, however, did the [trial] court recognize Husband's "manipulation of all facets of the criminal justice and court system in order to achieve power and control over Wife." [Trial Court Opinion, filed November 16, 2018,] at 30.  The court stated that Husband "was playing the system like a Stradivarius." Although Husband tried to persuade the court that Wife suffered from various mental illnesses, the court ultimately concluded that Wife's erratic behavior was attributable to years of domestic violence.
>
> At the PFA hearing, Wife testified to Husband's extensive abuse and produced photographic evidence of the same.  The court further determined that Husband used custody of the parties' child as a "weapon against Wife."  **See** [**id.**] at 41.  The court issued a two-year PFA order, which included provisions awarding Wife exclusive possession of the marital residence and temporary sole custody of the child pending a custody conference[.]

**C.H.L. v. W.D.L.**, 214 A.3d 1272, 1275–76 (Pa. Super. 2019) (internal citation omitted).  The relevant portions of the PFA order stated: "[Husband] shall not . . . harass or threaten [Wife,]" and "[Husband] is prohibited from having ANY CONTACT with [Wife] . . . either directly or indirectly, at any location, including but not limited to any contact at [Wife]'s . . . school, business, or place of employment."  Final PFA Order, 7/30/2018, at 1-2 (emphasis in original).  Husband appealed the PFA order, and this Court affirmed the order.  **C.H.L.**, 214 A.3d at 1275.

> On February 25, 2019 the District Attorney of Monroe County . . . petitioned th[e trial c]ourt for a hearing after an affidavit of [ICC]

was filed with their office on February 21, 2019, alleging the violation of [the] existing PFA order. Th[e trial c]ourt scheduled a hearing for March 4, 2019. The hearing was continued until March 18, 2019, and was heard on that date, as scheduled. . . . Jason Leon, Esq., served as counsel for [Husband]. Parties first stipulated that a no-contact PFA was entered into effect on July 30, 2018, and remained active during the entirety of the February 21, 2019 incident. [N.T. at] 1-2. Then, the hearing began, and [the trial court] heard testimony from [Wife], as well as, Monroe County Sherriff's Deputy, David Loncki, and [K.L.], [Husband's] 17-year-old daughter.

[Wife] arrived at the Monroe County Courthouse, courtroom 3, on February 21, 2019, as a subpoenaed witness to a summary appeal harassment charge against [Husband]. [*Id.* at] 2-3. The gallery in courtroom 3 of the Monroe County Courthouse is 6 rows deep and 14 seats across, for a total of 84 seats. [*Id.* at] 21. The courtroom was approximately half full when [Wife] arrived. [*Id.* at] 22. She entered into the courtroom before [Husband], and chose a seat on her far left side (right side if your back is to the bench), in about the 3rd or 4th row from the front. [*Id.* at] 5, 23, 26-27. A few minutes later, [Husband] arrived, and there were still approximately half of the seats in the gallery available, a large number of which were far from where [Wife] was already seated. [*Id.* at] 23.

Nevertheless, [Husband] sat down with his daughter, [K.L.], two rows directly behind [Wife]. [*Id.* at] 27. Deputy Loncki . . . testified that, [Husband] "came in, looked at [Wife], and made a beeline right to sit behind her." [*Id.* at] 24. Deputy Loncki further testified that when [Husband] sat down, "he was talking loudly, obnoxiously, so she would hear it." [*Id.*] . . . [H]e described [Husband]'s tone as "obnoxious ... and aggressive." [*Id.*]

Trial Court Opinion, filed May 28, 2019, at 2-4. Husband said, "We're going to do whatever it takes to get [Wife] back in jail." N.T. at 5.

Following this incident, [Wife] approached Deputy Loncki and requested to sit outside the courtroom until she was needed. [N.T. at] 25. After she left, [Husband] was quiet. [*Id.*] Upon exiting the courtroom, after his proceeding had resolved, he turned toward [Wife] and smirked. [*Id.* at] 7. [The Commonwealth] played for the court a video recording of security footage that clearly shows [Husband] leaving the courtroom and

- 3 -

pointedly turning toward [Wife] who is sitting in the hall. [*Id.* at] 9[;] Commonwealth Exhibit 1.

As a result of the March 18, 2019 hearing,[the trial court] issued an order finding [Husband] in contempt of the PFA against him. The contempt sanction of th[e trial c]ourt extended the existing PFA order for an additional two years. On April 16, 2019, [Husband] filed the instant Notice of Appeal and on May 8, 2019, he timely filed his Concise Statement of Errors.

Trial Court Opinion, filed May 28, 2019, at 2-4.

Husband presents the following issues for our review:

[A.] Whether the trial court erred and abused its discretion in permitting [Wife] to present evidence regarding allegations that were not contained in her petition for contempt filed on February 21, 2019, thereby depriving [Husband] of his constitutional right to notice and due process?

[B.] Whether the trial court erred and abused its discretion in finding [Husband] guilty beyond a reasonable doubt of [ICC] when his statements were not communicated directly to [Wife]?

C. Whether the trial court erred and abused its discretion in promulgating vague and arbitrary standards of what constitutes contempt, such as prohibiting [Husband] from looking in [Wife]'s direction or speaking in [Wife]'s presence, thereby depriving him of his constitutional rights of liberty and free speech?

D. Whether the trial court erred and abused its discretion in exhibiting bias and prejudice against [Husband] by improperly relying on the court's perceived history of this case when determining whether [Husband] was guilty of [ICC]?

Husband's Brief at 4-5 (issues reordered to facilitate disposition) (suggested

answers and unnecessary capitalization omitted).

Preliminarily, we note that Husband's claim that "the trial court erred

and abused its discretion in permitting [Wife] to present evidence regarding

allegations that were not contained in her petition for contempt filed on

February 21, 2019, thereby depriving [Husband] of his constitutional right to

notice and due process[,]" Husband's Brief at 40, is waived for failure to object to or to motion to strike this evidence during the contempt hearing. Pa.R.E. 103(a); Pa.R.A.P. 302(a).

Husband next contends that "the trial court erred and abused its discretion in finding [him] guilty beyond a reasonable doubt of [ICC] when his statements were not communicated directly to [Wife]." Husband's Brief at 22.

> The PFA Act permits a court to hold an individual subject to a protection order in contempt of such order and to punish the defendant in accordance with the law. 23 Pa.C.S. § 6114(a). This Court has described the elements required for a finding of ICC as follows.
>
>> Where a PFA order is involved, an [ICC] charge is designed to seek punishment for violation of the protective order.... To establish [ICC], the Commonwealth must prove: 1) the order was sufficiently definite, clear, and specific to the contemnor as to leave no doubt of the conduct prohibited; 2) the contemnor had notice of the order; 3) the act constituting the violation must have been volitional; and 4) the contemnor must have acted with wrongful intent.
>
> ***Commonwealth v. Brumbaugh***, 932 A.2d 108, 110 (Pa. Super. 2007) (some capitalization altered). "When reviewing a contempt conviction ... we are confined to a determination of whether the facts support the trial court decision. We will reverse a trial court's determination only when there has been a plain abuse of discretion." ***Id.*** at 111 (citation omitted).

***Commonwealth v. Wilson***, 2020 PA Super 18, *4-*5 (filed January 31, 2020). Since the question of whether the underlying "order was sufficiently definite, clear, and specific to the contemnor as to leave no doubt of the conduct prohibited" is part of the analysis for determining whether the finding of ICC was proper, Husband's subsequent issue concerning whether the trial

court "promulgat[ed] vague and arbitrary standards of what constitutes contempt," is incorporated into this analysis.   Husband's Brief at 47.

After a thorough review of the record, the applicable law, and the well-reasoned opinion of the Honorable Jennifer Harlacher Sibum, we conclude that these issues merit no relief.  The trial court opinion properly disposes of those questions:

> [For the first element of ICC, l]ooking at [the PFA order's] plain language [of "[Husband] is prohibited from having ANY CONTACT with [Wife] . . . directly or indirectly," Final PFA Order, 7/30/2018, at 2 (emphasis in original), the trial court] found that [the] PFA order is sufficiently clear to leave no doubt that indirect communication with [Wife] is expressly prohibited at any time. Likewise, [the trial court] found the PFA order is sufficiently clear that "[Husband] shall not . . . harass or threaten [Wife]." [**Id.** at 1.]  A plain reading of the order makes clear that behavior or communications that are harassing or threatening are expressly prohibited.
>
> In this case, [the trial court] relied primarily upon the credible testimony of Deputy Loncki, for the reasoning placed on the record, that [Husband] "made a beeline right to sit behind [Wife]." [N.T. at] 24.  Deputy Loncki further testified [Husband] spoke loudly so that [Wife] could hear, and that his tone was "obnoxious ... and aggressive." [**Id.**]  He noted in his testimony before th[e trial c]ourt that [Husband] was quiet after [Wife] left to sit outside the courtroom for the remainder of the proceeding.  [**Id.** at] 25. Furthermore, we could see from the security footage that upon exiting the courtroom [Husband] pointedly turned toward [Wife]. [**Id.** at] 9[;] Commonwealth Exhibit 1.
>
> Indirect communication can include body language, facial expressions, as well as, statements made to third parties with the intent that another person "overhear" or be told of the conversation later.   To determine whether [Husband] had wrongful intent, [the trial court] looked at the totality of [Husband]'s actions, including:  1) making a beeline toward [Wife]; 2) choosing a seat in close proximity to [Wife], when there were a large number of seats available in the courtroom;

- 6 -

3) speaking in a loud, obnoxious, and aggressive tone, with the design that [Wife] hear him; 4) quieting down and changing his demeanor after [Wife] exited the courtroom; 5) pointedly turning toward [Wife] upon exiting the courtroom; and 6) smirking at [Wife] upon exiting the courtroom. [The trial court] found that the deliberate nature of [Husband]'s actions reveals his wrongful intent, and that his proximity to [Wife], along with the hostility in his tone, was paramount to intimidation.

Looking at the elements required to prove [ICC], and [Husband]'s no-contact PFA order, it is clear that it was not the Commonwealth's burden to prove that statements were "communicated directly to [Wife]," or that such statements contained "any measure of immediacy or threat." [Husband]'s statements holding Commonwealth to a higher burden than necessary misstate and misunderstand the law. . . . Following the elements required for a finding of [ICC] under the facts of this case, we found that the Commonwealth proved beyond a reasonable doubt that [Husband]'s PFA order was sufficiently clear leaving no doubt that indirect communication with [Wife], as well as harassing or threatening behavior toward [Wife] is prohibited. [The trial court] found the Commonwealth proved beyond a reasonable doubt that [Husband] had notice of the PFA order entered against him. [The trial court] found the Commonwealth proved beyond a reasonable doubt that [Husband] indirectly communicated with [Wife] and intimidated [Wife], both of which constitute prohibited acts under the order. Finally, [the trial court] found the Commonwealth proved beyond a reasonable doubt that [Husband] acted with wrongful intent when communicating with and intimidating [Wife]. Accordingly, [the trial court] found [Husband] to be in [ICC] of his PFA order. . . .

During the March 18, 2019 hearing, speaking in dicta to [Husband], [the trial court] attempted to make concrete behaviors which may be construed as indirect communication. In doing so, it was [the trial court's] goal to reinforce in [Husband]'s mind that he is expressly prohibited from communicating indirectly with [Wife] in any form. . . . At no point during the March 18, 2019 trial did [the trial court] modify [Husband]'s PFA order to include any further prohibited behaviors other than those previously listed in the July 30, 2018 PFA final order. The standard of what constitutes contempt . . . is constrained to the prohibited behaviors as listed in [Husband]'s Final PFA order.

Trial Court Opinion, filed May 28, 2019, at 6–8, 10-11.

Our only additional comments concern Husband's reliance in his appellate brief on two of this Court's cases. First, Husband relies upon the case of **Commonwealth v. Haigh**, 874 A.2d 1174 (Pa. Super. 2005). Husband's Brief at 26-28. However, "our decision in **Haigh** was decided on a very narrow factual basis" and is distinguishable from the current action. **Commonwealth v. Brumbaugh**, 932 A.2d 108, 110 (Pa. Super. 2007).

> In **Haigh**, the defendant was prohibited from contacting his wife of 31 years by a PFA Order dated August 21, 2003. Less than six (6) months later, after learning by way of letter that his wife had a mass removed from her breast, the defendant attempted to contact her by letter and phone. . . . During the course of the [first ICC] hearing [for the attempted contact by letter and phone], the defendant . . . "shuffled slightly towards his wife, leaned over and asked her, 'Are you okay on top?'." . . . The defendant was [again] charged with [ICC] because of his action [at the first ICC hearing]. At [the second ICC hearing,] neither Mrs. Haigh nor the deputy sheriff testified that defendant did or said anything threatening. Mrs. Haigh added she did not feel threatened under the circumstances. The Trial court found defendant guilty. The Superior Court reversed[.]

**Id.** Initially, we observe that **Haigh** involved direct communication by the defendant and is therefore not germane to Husband's insistence that "his statements were not communicated directly to [Wife]." Husband's Brief at 22. Moreover, in **Haigh**, the defendant's non-threatening contact with his wife was to express concern about a serious illness, whereas, in the current action, Husband's contact with Wife was not just an expression of concern but was made with the purpose of **threatening** her with incarceration.

Husband also relies on **K.S. v. J.L.**, 198 A.3d 478, No. 357 MDA 2018 (Pa. Super. filed September 21, 2018) (unpublished memorandum), which he

- 8 -

attaches to his appellate brief. Husband's Brief at 31-33. However, unpublished, non-precedential memorandum decisions of this Court may only be cited in an appellate brief for their persuasive value if they were filed after May 1, 2019. Pa.R.A.P. 126(b). **K.S.** was filed prior to May 1, 2019, and, accordingly, has no persuasive value.[1]

For the reasons given above, Husband's statements did not need to be "communicate[] directly" to Wife in order for him to be found ICC, Husband's Brief at 22, and the facts of record support the trial court's decision that Husband indirectly communicated with Wife. Trial Court Opinion, filed May 28, 2019, at 8. Husband's issues thereby merit no relief.

Finally, Husband argues that "the trial court erred and abused its discretion in exhibiting bias and prejudice against [Husband] by improperly relying on the court's perceived history of this case when determining whether [Husband] was guilt of [ICC]." Husband's Brief at 55. Again, after a thorough review of the record, the applicable law, and the logical explanation by Judge Harlacher Sibum, we conclude that Husband's final issue merits no relief. The trial court opinion comprehensively discusses and properly disposes of that question:

---

[1] To the extent we were to consider **K.S.**, we would note that it does not control, because the appellant in **K.S.** was order to pay a $200 fine and to serve a 15-day suspended sentence, No. 357 MDA 2018, unpublished memorandum at 1, 4, 15 & 14-15 n.10, whereas Husband's punishment of an extension of the duration of the PFA order is expressly permitted by the PFA Act itself. 23 Pa.C.S. § 6114(b)(4).

> While the parties in this matter do have a long history before th[e trial c]ourt, and [the court] mentioned on the record that [Husband]'s actions in this matter comported with his past behavior, when [the court] found [ICC], [it] relied solely upon the facts and evidence pertaining to the February 21, 2019 incident. [The court's] comments laid out clearly on the record and [its] reasoning as detailed . . . in [its opinion], are completely focused on [Husband]'s actions on February 21, 2019, on [Husband]'s July 30, 2018 Final PFA order, and on precedential Pennsylvania case law, detailing the elements required for indirect criminal contempt.

Trial Court Opinion, filed May 28, 2019, at 11-12.

In conclusion, pursuant to our review of the record, the facts support the trial court decision. **See Wilson**, 2020 PA Super 18, \*5. Having found no abuse of discretion, we affirm the trial court order.

Order affirmed.

Judgment Entered.

_Joseph D. Seletyn_

Joseph D. Seletyn, Esq.
Prothonotary

Date: 3/12/20