J-S18043-26

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| ANDERSON EDWARD MCFARLAND | : | |
| | : | |
| Appellant | : | No. 1459 MDA 2025 |

Appeal from the Judgment of Sentence Entered September 17, 2025
In the Court of Common Pleas of York County Criminal Division at No(s):
CP-67-MD-0001510-2025

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| ANDERSON E. MCFARLAND | : | |
| | : | |
| Appellant | : | No. 1460 MDA 2025 |

Appeal from the Judgment of Sentence Entered September 17, 2025
In the Court of Common Pleas of York County Criminal Division at No(s):
CP-67-CR-0002771-2022

BEFORE: DUBOW, J., BECK, J., and BENDER, P.J.E.

MEMORANDUM BY BENDER, P.J.E.: **FILED JUNE 23, 2026**

In these consolidated appeals,[1] Appellant, Anderson Edward McFarland, appeals from the judgment of sentence of one day of non-reporting probation imposed after the trial court convicted him of indirect criminal contempt (ICC) for violating a temporary protection from abuse (PFA) order issued under the

---

[1] This Court *sua sponte* consolidated these appeals by the order filed November 20, 2025.

Protection from Abuse Act (PFAA), 23 Pa.C.S. §§ 6101-6122.  Appellant also challenges the court's determination that Appellant violated his parole in a separate case with the new ICC conviction.  After careful review, we affirm the judgments of sentence.

Appellant is father to a ten-year-old son with Tiffany McMeans (Mother), with whom Appellant shares legal custody.  As a part of the custody arrangement, all communication between the parties regarding parenting were ordered to be conducted via AppClose, a software program used to facilitate and manage co-parenting.[2]  N.T. ICC and Violation Hearing, 9/17/25 at 7.  Pursuant to the custody agreement, Appellant was entitled to have a phone call at 7:40 p.m. with his son on days that he did not have custody. **See** Custody Order, 10/2/24.  Further, if the child did not make this call by 8:00 p.m., Appellant "shall inquire with Mother by AppClose[,]" and Mother was to respond by 8:15 p.m.  **Id.**

The custody situation changed when Mother obtained a temporary PFA on April 23, 2025.  The temporary PFA provided that Appellant was not permitted to have any contact with Mother, he had no partial physical custody/visitation rights, and Appellant could contact the child via "the child's phone only."  Order, 4/23/25.  The PFA order also instructed the parties on how to file a custody petition, noting that the PFAA "was enacted to provide

---

[2] The program provides for calling and messaging between parents, offers ways to share calendars to manage custody schedules, and has an integrated payment system for shared expenses, among other things.  **See**, Appclose.com/#features (last accessed May 28, 2026).

immediate protection from abuse and not to establish a procedure for determining permanent custody of the children." **Id.** Appellant received a copy of the PFA order in open court. **Id.**

On May 27, 2025, Mother contacted the Northern York Regional police to report that Appellant had called her called her twice on that date in violation of the temporary PFA order. In response, police filed a criminal complaint charging Appellant with ICC for violating the temporary PFA by contacting Mother. Criminal Complaint, 5/27/25. Specifically, Mother alleged that Appellant sent messages on AppClose stating, "I am calling to speak with my son. You stated in court that he does not have a phone. So, I am using this app as a means to speak with my son. Thank you."

The ICC trial was held on September 17, 2025, after which the trial court convicted Appellant as charged. Appellant was also found to be in violation of his parole at CP-67-CR-2771-2022.[3] With respect to the ICC charge, Appellant was sentenced to one day of non-reporting probation and ordered to pay a $300 fine. With respect to the parole case, Appellant was found to have violated the terms of his parole and was resentenced to a period of up to 564 days in York County prison, given 52 days of credit, ordered to complete a

---

[3] Appellant had been convicted at CP-67-CR-2771-2022 on December 18, 2024, of one count each of driving while his license was suspended (75 Pa.C.S. § 1543(a)) and obstructing the administration of law (18 Pa.C.S. § 5101). He had initially received an aggregate sentence of 2 years of probation. Appellant's probation was revoked on May 20, 2025, a sentence of 134 days to 23 months was imposed, and Appellant was paroled forthwith.

batterer's intervention program, and released forthwith.[4]  Appellant filed a notice of appeal in each case on October 16, 2025.  Both Appellant and the trial court have complied with Pa.R.A.P. 1925.

Appellant raises the following issues on appeal:

I.      Did the trial court err in finding [Appellant] guilty of Indirect Criminal Contempt for violating a temporary Protection from Abuse Order where the Commonwealth failed to prove that [Appellant] acted with wrongful intent?

II.     Did the trial court err in finding [Appellant] in violation of his parole for a new conviction of Indirect Criminal Contempt for violating a temporary Protection from Abuse Order where the Commonwealth failed to prove the Indirect Criminal Contempt by failing to show [Appellant] acted with wrongful intent?

Brief for Appellant at 4.

Both of these issues argue that Appellant's conviction for ICC cannot stand because the Commonwealth failed to prove a necessary element, that he acted with wrongful intent.

"When reviewing a contempt conviction, much reliance is given to the discretion of the trial judge." *Commonwealth v. Haigh*, 874 A.2d 1174, 1176 (Pa. Super. 2005).  This Court's review is "confined to a determination of whether the facts support the trial court's decision."  *Id*.  Reversal of a finding of contempt is permissible only to correct an abuse of the trial court's discretion.  *Id*.

---

[4] Although it is unclear why the final hearing was delayed, the court denied Mother's request for a final PFA order on October 3, 2025.  Nonetheless, this fact is immaterial to the ICC conviction.  Our Court has stated that "the outcome of the final PFA hearing has no bearing on whether there was a valid order prohibiting contact in effect at the time" that the contact at issue occurred.  *Commonwealth v. Wilson*, 227 A.3d 928, 939-40 (Pa. Super. 2020).

*Commonwealth v. Williams*, 314 A.3d 910, 912 (Pa. Super. 2024) (some citations omitted).

The PFAA permits a court to hold an individual that is subject to a protection order in contempt of such order. 23 Pa.C.S. § 6114(a). More pertinently, an ICC charge is designed to punish those people who violate the protective order issued under the PFAA. *Commonwealth v. Brumbaugh*, 932 A.2d 108, 110 (Pa. Super. 2007). To prove ICC, the Commonwealth must establish four elements: (1) the order that was violated was sufficiently definite, clear, and specific to the contemnor as to leave no doubt of the conduct prohibited; (2) the contemnor had notice of the order; (3) the act constituting the violation must have been volitional; and (4) the contemnor must have acted with wrongful intent. *Wilson*, 227 A.3d at 933, *citing Brumbaugh*, *supra*.

At the ICC hearing, Mother testified that she had obtained a temporary PFA order against Appellant, her son's father. N.T., *supra*, at 6. The order included a "no contact" provision. *Id.* Mother stated that Appellant contacted her through AppClose *after* she obtained the temporary PFA. *Id.* Mother admitted that, pursuant to the custody order entered in October of 2024, Appellant was entitled to a phone call with his son on non-custodial days. *Id.* at 11. The custody order set forth the procedure for these calls: the child was to call Appellant at 7:40 p.m., and, if Appellant missed that call, he was entitled to call the child back until 8:00 p.m. *Id.* at 11-12. The order further provides that, if the child does not call, Appellant was to inquire with Mother

through AppClose. *Id.* at 12, 14. This procedure was in place prior to the entry of the PFA on April 23, 2025. *Id.* at 14. The procedure could not be followed because Mother took the child's cell phone away, maintaining that he "couldn't handle the responsibility." *Id.* at 16. Thus, Appellant could not speak with the child using the custody court's procedures. However, Appellant did not petition to change the custody order after learning that his son no longer had his own phone.

Officer Alexis Haggerty testified at the ICC hearing that, pursuant to the temporary PFA order, Appellant only had permission from the court to contact the child, not Mother. *Id.* at 20. Mother had notified 911 after Appellant contacted her via AppClose, asserting that his conduct had violated the temporary PFA. *Id.* Officer Haggerty then filed the complaint charging Appellant with ICC.

Appellant testified on his own behalf. Appellant stated that the custody order permitted him to call his son via his son's cell phone, and that he was never given any alternative to contact him if there was no phone available. *Id.* at 28. Appellant also noted that pursuant to the custody agreement, he had been told to reach out to Mother if he was unable to reach the child. *Id*. Appellant testified that he used AppClose to talk to his son because he wanted to make a record of when he spoke to the child. *Id.* at 29-30. Appellant further explained:

> And it isn't as if I, you know, blatantly want to try to contact [Mother]. I don't want to violate the PFA. My only means to contact my son is through the AppClose because as you stated he

doesn't have a phone and I didn't go and just try to contact him out of nowhere. I waited specifically a week after, you know, I was incarcerated[5] in order to speak to my son.

The only reason I try – I haven't spoken to my son in almost ten months now. I haven't spoken to him and I haven't seen him, and that's the only thing I want to do is speak to my son. The PFA clearly states that I'm able to use the means that are provided to me in paragraph 5, and paragraph 5 specifies custody. The custody agreement specifies that I'm able to speak to my son on a daily basis. If I'm not able to receive a phone call from him I'm supposed to inquire as to why I haven't received a phone call from him and/or make contact to him specifically though AppClose.

*Id.* at 31-32.

In the Pa.R.A.P. 1925(a) opinion in this case, the trial court references the language used in the temporary PFA, which includes the notation that Appellant is "prohibited from having ANY CONTACT with [Mother]." Trial Court Opinion (TCO), 12/12/25, at 4 (emphasis in original order). Further, in connection to paragraph 5 as discussed by Appellant above, the court stressed that the order provides that the "child and [Appellant] may have contact *limited to child's phone only*." *Id.* (emphasis added). In addition, the court noticed that the PFA order did not include language common in custody matters to permit minor contact between parents to discuss custody matters or the health, safety and welfare of the child; instead, the court imposed a "total, blanket ban on communications" with Mother. *Id.* The court also discussed its perception of Appellant's prior response when he had been unable to talk to his son – when he did not receive a prompt call, Appellant

---

[5] No details regarding this reference to Appellant's previous incarceration were provided, but the dates appear to coincide with the sentence imposed after his first probation violation on CP-67-CR-2771-2022.

contacted local police asking them to provide a "welfare check" on the child so many times that "the child became accustomed to the regular visits from the police." *Id.* at 5.

In analyzing whether sufficient evidence was presented to support the ICC conviction, we note:

> The elements of ICC are straightforward: a sufficiently definite, clear, and specific order; notice of the order; a volitional act; and wrongful intent. *Brumbaugh*, 932 A.2d at 111. In contempt matters, "wrongful intent can be imputed by virtue of the substantial certainty that [one's actions would place one] in contact with [the PFA petitioner] in violation of the PFA Order." *Id.* (finding evidentiary support for possession of wrongful intent where the contemnor, knowing that he was under a PFA order prohibiting contact, accepted the PFA petitioner's invitation to attend a party with her); *Commonwealth v. Lambert*, 147 A.3d 1221, 1227 (Pa. Super. 2016) (finding wrongful intent satisfied by Facebook posts indirectly referencing the petitioner the day following the entry of the PFA order).

*Wilson,* 227 A.3d at 939.

Here, the temporary PFA order clearly prohibited Appellant from having **any contact** with Mother. Appellant does not dispute that he had notice of that order, nor does he dispute that he volitionally used AppClose to transmit communications through a platform that necessarily involved contact with Mother. Instead, Appellant contends that the Commonwealth failed to establish wrongful intent because his purpose was not to threaten, harass, or otherwise abuse Mother, but merely to communicate with his son.

Appellant's argument misconstrues the meaning of "wrongful intent" in the ICC context. The relevant inquiry is not whether Appellant acted with hostility or malicious purpose toward Mother. Rather, wrongful intent may be

inferred where a contemnor knowingly engages in conduct substantially certain to violate the terms of a court order. *Wilson*, *supra*; *Brumbaugh*, *supra*. We find this was established herein.

Although Appellant characterizes his conduct as an attempt to exercise his custodial communication rights, the temporary PFA entered subsequent to the custody order superseded the prior custody arrangement regarding communication with Mother. *See Goldner on behalf of K.M. v. Mangualt*, 345 A.3d 1212, 1218 (Pa. Super. 2025) (holding that PFA orders are designed to implement an emergency reprieve until a court can grant permanent relief through a new custody order; as such, their provisions will *temporarily* supersede a custody order). While the prior custody order permitted Appellant to inquire through AppClose if the child failed to make a scheduled call, the PFA order imposed a blanket prohibition on any contact with Mother and expressly limited Appellant's contact with the child to the child's phone only. Thus, even accepting Appellant's assertion that he subjectively wished only to speak with his son, he knowingly chose a means of communication that necessarily required contact with Mother in direct violation of the PFA.

Accordingly, because Appellant knowingly engaged in conduct substantially certain to result in prohibited contact with Mother, the trial court properly inferred wrongful intent. The Commonwealth therefore proved all elements of indirect criminal contempt, and Appellant is not entitled to relief on this claim.

With respect to Appellant's second issue, his challenge to the parole violation rests entirely upon his assertion that the ICC conviction was improper. Because we conclude that the evidence sufficiently supported Appellant's ICC conviction, this derivative claim necessarily fails. Appellant's parole violation was properly grounded upon his new conviction, and he is not entitled to relief.

Judgment of sentence for ICC at CP-67-MD-1510-2025 is affirmed. Judgment of sentence following parole revocation and resentencing at CP-67-CR-2771-2022 is also affirmed.

Judgment Entered.

_____
Benjamin D. Kohler, Esq.
Prothonotary

Date: 06/23/2026