J-S01033-21

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

COMMONWEALTH OF PENNSYLVANIA : IN THE SUPERIOR COURT OF
: PENNSYLVANIA
:
v. :
:
:
:
W.L.W. :
:
Appellant : No. 726 MDA 2020

Appeal from the Judgment of Sentence Entered March 18, 2020
In the Court of Common Pleas of Lancaster County Civil Division at
No(s):  CI-17-01670

BEFORE:   LAZARUS, J., McCAFFERY, J., and STEVENS, P.J.E.[*]

MEMORANDUM BY STEVENS, P.J.E.:                **FILED FEBRUARY 12, 2021**

Appellant, W.L.W., appeals from the March 18, 2020, judgment of sentence entered in the Court of Common Pleas of Lancaster County following her conviction for indirect criminal contempt[1] for violation of an order entered pursuant to the Protection from Abuse ("PFA") Act.[2]  The trial court sentenced Appellant to fourteen days incarceration to be followed by five months of probation.

Additionally, Appellant's counsel has filed a petition seeking to withdraw his representation, as well as a brief pursuant to **Anders v. California**, 386

_____

[*] Former Justice specially assigned to the Superior Court.

[1] 23 Pa.C.S.A. § 6114.

[2] 23 Pa.C.S.A. § 6101 *et seq*.

U.S. 738, 87 S.Ct. 1396 (1967), and **Commonwealth v. Santiago**, 602 Pa. 159, 978 A.2d 349 (2009) (hereinafter "**Anders** brief"). After a careful review, we grant counsel's petition to withdraw and affirm Appellant's judgment of sentence.

The relevant facts and procedural history are as follows: Appellant and S.M.L. are the biological parents of three children, and during a custody dispute, on March 3, 2017, the trial court entered a temporary PFA order against Appellant as to S.M.L.

Thereafter, in August of 2017, the police filed two criminal complaints against Appellant. Each complaint charged Appellant with one count of indirect criminal contempt. The police alleged Appellant made direct contact with S.M.L. via several harassing emails in violation of the temporary PFA order. By orders entered on October 25, 2017, the trial court found Appellant guilty as to both counts of indirect criminal complaint and directed her to pay $300.00 in fines, plus costs for each contempt violation.

Following a hearing,[3] on January 17, 2018, the trial court entered a final PFA order against Appellant directing her to have no direct contact with S.M.L. Specifically, the order provided Appellant "shall not abuse, harass, stalk or threaten [S.M.L.] in any place where [he] might be found." PFA Order, filed 1/17/17. Also, the order indicated, except for contact permitted with regard

---

[3] Despite being properly served, Appellant failed to appear for the January 17, 2018, PFA hearing.

- 2 -

to the minor children, Appellant "shall not contact [S.M.L.]…by telephone or by any other means, including through third persons." *Id.* The final PFA order was set to expire on January 17, 2021.

On January 18, 2018, and February 20, 2018, the police filed complaints charging Appellant with indirect criminal complaint. The police alleged Appellant made direct contact with S.M.L. in violation of the final PFA order. By order entered on March 28, 2018, the trial court found Appellant guilty of one count of indirect criminal contempt as to both complaints. With regard to the January 18, 2018, charge, the trial court imposed a $300.00 fine, plus costs. As to the February 20, 2018, charge, the trial court sentenced Appellant to six months of probation, plus a fine of $300.00 and costs.

On February 7, 2020, the police filed a complaint against Appellant charging her with indirect criminal complaint. The police alleged Appellant made several threatening statements to S.M.L. in person on February 6, 2020, in violation of the final PFA order.

The trial court set February 19, 2020, as the trial date for the indirect criminal contempt charge. However, on February 19, 2020, Appellant requested a continuance so that she could obtain legal representation. The trial court continued the trial to March 18, 2020.[4]

_____

[4] We note that in cases involving contempt for violation of an order or agreement "[t]he defendant shall not have a right to a jury trial on a charge

On March 18, 2020, Appellant appeared for the bench trial and indicated she wished to represent herself. N.T., 3/18/20, at 3. She recognized she requested a continuance on February 19, 2020, in order to secure legal representation for the trial; however, she informed the trial court that she did not turn in any "paperwork" in an attempt to secure a public defender. *Id.* at 4. Also, despite the fact she had private counsel for the custody action in which the PFA order originated, she did not take steps to retain private counsel for the instant criminal matter involving the violation of the PFA order. *Id.* at 4-5.

The trial court conducted an on-the-record waiver of counsel colloquy, *id.* at 3-5, and Appellant signed an accompanying waiver of counsel form, which the trial court approved. After concluding Appellant knowingly, intelligently, and voluntarily waived her right to counsel, the trial court permitted Appellant to proceed *pro se*.

The Commonwealth then presented its case. S.M.L. testified that Appellant is his ex-paramour, and they have three minor children. S.M.L. confirmed the trial court issued a final PFA order on January 17, 2018. *Id.* at 8. S.M.L. testified Appellant demonstrated her awareness of the PFA order in

---

of indirect criminal contempt. However, the defendant shall be entitled to counsel." 23 Pa.C.S.A. § 6114(b)(3).

that she made Facebook postings about the order on January 28, 2018. *Id.* at 9-10.

S.M.L. testified that, on February 6, 2020, he and Appellant, along with their respective attorneys, were at the courthouse for a custody conference. *Id.* at 10-12. As S.M.L. waited for the custody conference to begin, he sat in a "little window vestibule next to the conference room." *Id.* at 13. Appellant sat down the hall near the elevator. *Id.*

However, after their attorneys went into the conference room, thus leaving S.M.L. and Appellant in the hall, Appellant "moved down the hallway to be directly in [S.M.L.'s] line of sight." *Id.* at 14. In response, S.M.L. moved "to the side of the vestibule where the wall was blocking [his] line of sight" of Appellant. *Id.* After S.M.L. moved, Appellant said to S.M.L. "are we going to keep playing this f-ing lawyer game?" *Id.*

S.M.L. testified he ignored Appellant, and she "got up and walked over to [S.M.L.]." *Id.* at 15. Appellant stood within three feet of S.M.L. and said to him "why don't you stop being a pussy and just face me." *Id.* In response, S.M.L. stood up and "walked the whole way down the hallway." *Id.*

S.M.L. immediately reported the incident to his attorney, who secured video footage of the incident from the courthouse's surveillance camera. *Id.* at 16-17. S.M.L. presented the video footage as evidence during the contempt proceedings.

Sergeant Samantha Harven of the Lancaster County Sheriff's Office confirmed that S.M.L. reported the above incident to her on February 6, 2020. *Id.* at 19. She viewed the security footage from the courthouse's hallway surveillance cameras, and she provided S.M.L. with a copy of the video on a thumb drive. *Id.* at 20. Based on S.M.L.'s report, as well as the video footage, Sergeant Harven filed a criminal complaint charging Appellant with one count of indirect criminal contempt. *Id.* at 21. On cross-examination, Sergeant Harven admitted the video did not contain audio. *Id.* at 22.

Appellant declined to testify. However, she argued the evidence was insufficient to conclude she cursed at Appellant or said anything "hostile" to him. *Id.* at 23.

By order entered on March 18, 2020, the trial court convicted Appellant of one count of indirect criminal contempt and sentenced her to fourteen days in prison, to be followed by 5 months of probation. The trial court also extended the PFA order for two years.

Appellant filed a counseled notice of appeal on May 15, 2020. The trial court directed Appellant to file a Pa.R.A.P. 1925(b) statement, appellate counsel filed a Rule 1925(c)(4) statement indicating his intent to file an *Anders* brief, and the trial court filed a brief Rule 1925(a) opinion.

On November 30, 2020, counsel filed in this Court a petition seeking to withdraw his representation, as well as an *Anders* brief. Appellant filed no further submissions either *pro se* or through privately-retained counsel.

- 6 -

Preliminarily, we determine whether we have jurisdiction over the instant appeal. Generally, a notice of appeal must be filed within 30 days after the entry of the order from which the appeal is taken. Pa.R.A.P. 903(a). Here, Appellant was sentenced on March 18, 2020; however, she did not file her notice of appeal until May 15, 2020, which is beyond the thirty day time period provided for in Rule 903(a). However, we decline to quash the instant appeal.

On March 16, 2020, the Pennsylvania Supreme Court declared "a general, statewide judicial emergency until April 14, 2020, on account of COVID-19." Supreme Court of Pennsylvania No. 531 Judicial Administration Docket, Order, 3/16/20, at 1. The order authorized the president judges in the individual judicial districts to, *inter alia*, "suspend time calculations for the purposes of time computation relevant to court cases…as well as time deadlines[.]" *Id.* at 2. The Supreme Court extended and expanded the scope of the judicial emergency in several supplemental orders, directing that the emergency shall cease on June 1, 2020. Supreme Court of Pennsylvania Nos. 531 & 532 Judicial Administration Docket, Order, 5/27/20.

Pursuant to the Supreme Court's March 16, 2020, order, the President Judge of the Lancaster County Court of Common Pleas declared a judicial emergency. In an order filed on March 18, 2020, the President Judge indicated time limitations shall be extended until April 15, 2020, and "any filing required by statute, court order, or order of court prior to that date shall be considered timely filed if filed on or before the close of business on April 15, 2020." 2nd

Judicial District Administrative Order (AD20-2020), 3/18/20. Thereafter, on April 24, 2020, the President Judge filed an administrative order extending the judicial emergency until May 31, 2020. In the April 24, 2020, order, the President Judge indicated:

> Any criminal, civil, family or orphans' court legal papers or pleadings which were required to be filed between March 18, 2020 and April 30, 2020 shall be deemed timely filed if they are filed within 60 days of the original filing deadline. Any such legal papers or pleadings which are required to be filed between May 1, 2020 and May 31, 2020 shall be deemed timely filed if they are filed within 30 days of the original filing deadlines.

2nd Judicial District Administrative Order (AD30-2020), 4/24/20.

Accordingly, based on the aforementioned, we decline to quash Appellant's May 15, 2020, notice of appeal as untimely filed.

Before addressing the issues raised on appeal, we must first resolve counsel's petition to withdraw. *Commonwealth v. Goodwin*, 928 A.2d 287, 290 (Pa.Super. 2007) (*en banc*). There are procedural and briefing requirements imposed upon an attorney who seeks to withdraw on appeal pursuant to which counsel must:

> 1) petition the court for leave to withdraw stating that, after making a conscientious examination of the record, counsel has determined that the appeal would be frivolous; 2) furnish a copy of the brief to the [appellant]; and 3) advise the [appellant] that he or she has the right to retain private counsel or raise additional arguments that the [appellant] deems worthy of the court's attention.

***Commonwealth v. Cartrette***, 83 A.3d 1030, 1032 (Pa.Super. 2013) (*en banc*) (citation omitted). In addition, our Supreme Court in ***Santiago*** stated that an ***Anders*** brief must:

> (1) provide a summary of the procedural history and facts, with citations to the record; (2) refer to anything in the record that counsel believes arguably supports the appeal; (3) set forth counsel's conclusion that the appeal is frivolous; and (4) state counsel's reasons for concluding that the appeal is frivolous. Counsel should articulate the relevant facts of record, controlling case law, and/or statutes on point that have led to the conclusion that the appeal is frivolous.

***Santiago***, 602 Pa. at 178-79, 978 A.2d at 361. Counsel also must provide the appellant with a copy of the ***Anders*** brief, together with a letter that advises the appellant of his or her right to "(1) retain new counsel to pursue the appeal; (2) proceed *pro se* on appeal; or (3) raise any points that the appellant deems worthy of the court's attention in addition to the points raised by counsel in the ***Anders*** brief." ***Commonwealth v. Nischan***, 928 A.2d 349, 353 (Pa.Super. 2007) (citation omitted). Substantial compliance with the ***Anders*** requirements is sufficient. ***See id.***

Herein, counsel filed a petition to withdraw as counsel and an ***Anders*** brief. His brief and petition substantially comply with the technical requirements of ***Anders*** and ***Santiago***. Moreover, counsel has provided this Court with a copy of the letter, which he sent to Appellant advising her of her right to retain new counsel, proceed further with her case *pro* se, and raise any points that she deems worthy of this Court's attention. ***See Commonwealth v. Millisock***, 873 A.2d 748 (Pa.Super. 2005). Therefore,

- 9 -

we proceed to examine the issues counsel identified in the **Anders** brief and then conduct "a full examination of all the proceedings, to decide whether the case is wholly frivolous." **Commonwealth v. Yorgey**, 188 A.3d 1190, 1195 (Pa.Super. 2018) (*en banc*) (quotation omitted).

In the **Anders** brief, counsel sets forth the following issue in the "Statement of Questions Presented" (verbatim):

1. Should appellate counsel be granted leave to withdraw as counsel because any appellate issues in the instant case are frivolous?

**Anders** Brief at 4.

Although Appellant's counsel has set forth a general issue in the Statement of Questions Presented portion of the **Anders** brief, the argument portion clarifies that the appellate issues Appellant wishes to raise are as follows: (1) whether Appellant knowingly and voluntarily waived her right to counsel during the March 18, 2020, bench trial, and (2) whether the evidence was sufficient to sustain Appellant's conviction for indirect criminal contempt.

In the first issue, Appellant suggests she was deprived of her right to counsel in the criminal contempt proceeding. Specifically, she contends she did not knowingly and voluntarily waive her right to counsel.

It is undisputed that Appellant was entitled to counsel at the trial for her indirect criminal contempt charge. **See** 23 Pa.C.S.A. § 6114(b)(3). However, "[t]he right to self-representation is necessarily implied within the structure of the Sixth Amendment of the U.S. Constitution." **Commonwealth v.**

*Blakeney*, 596 Pa. 510, 946 A.2d 645, 655 (2008) (citation omitted). Before a defendant will be permitted to proceed *pro se,* the defendant must knowingly, voluntarily, and intelligently waive her Sixth Amendment right to counsel. *Id.*

To ensure a proper waiver, the trial court must conduct a "probing colloquy," as described by our Supreme Court:

> The "probing colloquy" standard requires Pennsylvania trial courts to make a searching and formal inquiry into the questions of (1) whether the defendant is aware of [her] right to counsel or not and (2) whether the defendant is aware of the consequences of waiving that right or not. Specifically, the court must inquire whether or not: (1) the defendant understands that [she] has the right to be represented by counsel, and the right to have free counsel appointed if [she] is indigent; (2) the defendant understands the nature of the charges against [her] and the elements of each of those charges; (3) the defendant is aware of the permissible range of sentences and/or fines for the offenses charged; (4) the defendant understands that if [she] waives the right to counsel [she] will still be bound by all the normal rules of procedure and that counsel would be familiar with these rules; (5) [the] defendant understands that there are possible defenses to these charges which counsel might be aware of, and if these defenses are not raised at trial, they may be lost permanently; and (6) the defendant understands that, in addition to defenses, the defendant has many rights that, if not timely asserted, may be lost permanently; and that if errors occur and are not timely objected to, or otherwise timely raised by the defendant, the objection to these errors may be lost permanently.

*Blakeney*, *supra*, 946 A.2d at 655 (quotation omitted).

Here, the trial court conducted an on-the-record colloquy at the March 18, 2020, bench trial. Additionally, Appellant completed a written waiver of counsel form, and she specifically acknowledged she read each paragraph contained therein. N.T., 3/18/20, at 3.

We conclude the colloquy sufficiently covered the areas contemplated in ***Blakeney***. The colloquy confirmed that Appellant wished to represent herself, was aware that she had the right to an attorney, was provided with notice of the charge against her, was provided with the permissible penalties and fines for the offense, understood that waiver of counsel meant a waiver of the attorney's expertise and experience, understood that she would be held to the same standards as an attorney (including the Rules of Evidence), and understood that an attorney may have certain defenses, and Appellant had other rights, that would be lost. N.T., 3/18/20, at 3-5. Further, the trial court confirmed Appellant had graduated from high school, completed a few years of college, and could read and write English. ***Id.*** at 5. Appellant also answered negatively when asked if she had any questions or concerns about waiving her right to counsel. ***Id.***

Based on the aforementioned, we agree with the trial court that Appellant voluntarily and knowingly waived her right to counsel.[5] ***See Blakeney***, ***supra***.

_____

[5] We note that, in the ***Anders*** brief, appellate counsel suggests that Appellant forfeited her right to counsel. In this regard, counsel notes Appellant was represented by private counsel in the custody action out of which the PFA order originated. Moreover, at the first date scheduled for the indirect criminal contempt trial, Appellant requested a continuance in order to secure legal representation. The trial court granted the request and, nearly a month later, Appellant appeared for the bench trial indicating her desire to proceed *pro se*. Appellant confirmed she did not take steps necessary to secure private counsel. Further, she confirmed she chose not to fill out paperwork to

Appellant's next issue is whether the evidence was sufficient to sustain her conviction for indirect criminal contempt.

> The standard we apply in reviewing the sufficiency of the evidence is whether viewing all the evidence admitted at trial in the light most favorable to the verdict winner, there is sufficient evidence to enable the fact-finder to find every element of the crime beyond a reasonable doubt. In applying [the above] test, we may not weigh the evidence and substitute our judgment for the fact-finder. In addition, we note that the facts and circumstances established by the Commonwealth need not preclude every possibility of innocence. Any doubts regarding a defendant's guilt may be resolved by the fact-finder unless the evidence is so weak and inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances. The Commonwealth may sustain its burden of proving every element of the crime beyond a reasonable doubt by means of wholly circumstantial evidence. Moreover, in applying the above test, the entire record must be evaluated and all evidence actually received must be considered. Finally, the trier of fact while passing upon the credibility of witnesses and the weight of the evidence produced, is free to believe all, part or none of the evidence.

**Commonwealth v. DiStefano**, 782 A.2d 574, 582 (Pa.Super. 2001) (citations and quotations omitted).

"When reviewing a contempt conviction…we are confined to a determination of whether the facts support the trial court decision. We will

---

determine her eligibility for a public defender. There is no indication that Appellant was unaware that she was entitled to counsel, she provided no excuse for failing to have counsel present, and the trial court gave Appellant ample opportunity to secure counsel. On this basis, citing to **Commonwealth v. Lucarelli**, 601 Pa. 185, 971 A.2d 1173 (2009), appellate counsel suggests Appellant forfeited her right to counsel due to her dilatory conduct. **See Anders** Brief at 10-11. In light of our discussion *supra*, we find it unnecessary to determine whether Appellant, through her own dilatory conduct, forfeited her right to counsel.

reverse a trial court's determination only when there has been a plain abuse of discretion." ***Commonwealth v. Brumbaugh***, 932 A.2d 108, 109-10 (Pa.Super. 2007). Moreover,

> A charge of indirect criminal contempt consists of a claim that a violation of an Order or Decree of court occurred outside the presence of the court. Where a PFA order is involved, an indirect criminal contempt charge is designed to seek punishment for violation of the protective order....To establish indirect criminal contempt, the Commonwealth must prove: 1) the Order was sufficiently definite, clear, and specific to the contemnor as to leave no doubt of the conduct prohibited; 2) the contemnor had notice of the Order; 3) the act constituting the violation must have been volitional; and 4) the contemnor must have acted with wrongful intent.

***Id.*** at 110 (citations and quotation marks omitted).

Here, the PFA order was sufficiently definite, clear, and specific in that it prohibited Appellant from having any contact with S.M.L., except for such contact as was permitted as it related to their minor children. Further, there is no doubt Appellant had notice of the PFA order. In this regard, S.M.L. testified Appellant made Facebook postings about the PFA order on January 28, 2018. N.T., 3/18/20, at 9-10. Also, prior to the instant incident, Appellant was arrested and convicted several times for violating the PFA order.

Moreover, the trial court did not err in concluding Appellant's contact with S.M.L. was volitional and she acted with wrongful intent. S.M.L. testified that, after the parties' attorneys went into the conference room, Appellant positioned herself so that she was directly in S.M.L.'s line of sight. ***Id.*** at 14. S.M.L. repositioned himself so he did not have to look at Appellant;

nevertheless, Appellant stated to him "are we going to keep playing this f-ing lawyer game?" ***Id.*** Moreover, Appellant walked over to S.M.L, stood within three feet of him, and said "why don't you stop being a pussy and just face me." ***Id.*** Sergeant Harven confirmed Appellant's movements were caught on the courthouse's video surveillance camera.

Based on the aforementioned, the evidence was sufficient to sustain Appellant's conviction for indirect criminal contempt of the PFA order. ***Brumbaugh***, ***supra***. Accordingly, there is no merit to this claim.

After examining the issues contained in the ***Anders*** brief, we agree with counsel that the appeal is wholly frivolous. "Furthermore, after conducting a full examination of all the proceedings as required pursuant to ***Anders***, we discern no non-frivolous issues to be raised on appeal." ***Yorgey***, 188 A.3d at 1195. Thus, we grant counsel's petition to withdraw and affirm Appellant's judgment of sentence.

Petition to withdraw as counsel granted. Judgment of sentence affirmed.


Judgment Entered.

_____
Joseph D. Seletyn, Esq.
Prothonotary


Date: 02/12/2021

- 15 -